849 F.2d 1012
 FRISCH'S RESTAURANTS, INC., Plaintiff-Appellant,
v.
ELBY'S BIG BOY OF STEUBENVILLE, OHIO; Elby's Family
Restaurant of Cambridge, Inc.; Park Corporation of Ohio;
Elby's Family Restaurant of Bridgeport Martins Ferry, Inc.;
Elby's Family Restaurants, Inc.; John Doe d/b/a Elby's
Family Restaurant of Marietta, Ohio, Defendants-Appellees.
 No. 87-3600.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 28, 1988.
Decided June 22, 1988.
Rehearing and Rehearing En Banc Denied Sept. 2, 1988.
 
 Arthur M. Recht, Volk, Frankovich, Anetakis, Recht, Robertson & Hellerstedt, Wheeling, W. Va., Albert Robin (argued), New York City, for defendants-appellees.
 Carl Genberg (argued), Columbus, Ohio, for plaintiff-appellant.
 Before MERRITT and KENNEDY, Circuit Judges, and PECK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this civil action for registered trademark infringement under Sec. 32(1) of the Lanham Act [15 U.S.C. Sec. 1114(1) ], statutory unfair competition under Sec. 43(a) of the Lanham Act [15 U.S.C. Sec. 1125(a) ], violation of the Ohio Deceptive Trade Practices Act [Ohio Rev.Code Ann. Secs. 4165.01-4165.04], and breach of contract, plaintiff-appellant Frisch's Restaurants, Inc. ("Frisch's") appeals the judgment of District Judge James Graham for defendants-appellees Elby's Family Restaurants ("Elby's"). We affirm the judgment of the District Court.
 
 FACTS
 
 2
 District Judge Graham made thorough findings of fact in his opinion below, which is published at 661 F.Supp. 971 (S.D. Ohio 1987). In this opinion, we will merely summarize the factual background. We find no error in Judge Graham's findings of fact.
 
 
 3
 Marriott Corporation is the owner of the "Big Boy" trademark and tradename. Frisch's has an exclusive license to use the Big Boy mark and name in Ohio. Frisch's operates Big Boy restaurants in many parts of the state, but not in the eastern Ohio market with which this litigation is concerned.
 
 
 4
 Elby's headquarters are in Wheeling, West Virginia. The corporation operates restaurants in West Virginia, Pennsylvania, and eastern Ohio. Prior to 1984, Elby's had an exclusive license to use the Big Boy mark and name in the panhandle of West Virginia and in most of western Pennsylvania.
 
 
 5
 Elby's restaurants in eastern Ohio were operated as Big Boy restaurants until 1971 pursuant to a license agreement with Frisch's. At Elby's request, the license agreement was terminated in 1971. This case arises out of Elby's advertising activities in the Wheeling, West Virginia market after 1971, specifically, out of Elby's use of the Big Boy mark and name in advertising directed to that market without disclosing that its Ohio restaurants, which were also in the Wheeling market area, were no longer affiliated with the Big Boy organization.
 
 
 6
 In July 1972, Frisch's filed suit against Elby's in West Virginia state court seeking injunctive relief, an accounting of profits, and damages for Elby's use of the Big Boy mark in its Ohio restaurants. In 1973, the Supreme Court of West Virginia entered a temporary injunction against Elby's, enjoining the Ohio restaurants from using the Big Boy and "Brawny Lad" trademarks in any manner in connection with Elby's operations within the state of Ohio.
 
 
 7
 In 1977, Frisch's filed suit in United States District Court, alleging that Elby's was passing off its double deck hamburger and steak sandwich as "Big Boy" and "Brawny Lad" sandwiches, respectively. The case was dismissed because of the pendency of the West Virginia action.
 
 
 8
 The instant case was filed in Ohio state court in November 1978. It was removed to the District Court in December 1978. In April 1979, the West Virginia state trial court stayed further proceedings in the Frisch's--Elby's litigation in that court pending the final determination of this action.
 
 
 9
 In October 1980, Frisch's moved for entry of a preliminary injunction forbidding Elby's from using the Big Boy trademark in any advertising medium that reached "a not insubstantial number of Ohioans" without disclosing the disaffiliation of the Ohio restaurants from the Big Boy organization. The District Court enjoined Elby's from using the Big Boy mark in its television advertisements without making a prominent disclosure that the Ohio Elby's restaurants were not associated with the Big Boy organization. Frisch's Restaurants, Inc. v. Elby's Big Boy, 514 F.Supp. 704 (S.D. Ohio 1981). Judge Bailey Brown, writing for a panel of this Court, affirmed and further held that the injunction should extend to Elby's newspaper advertising. Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir.), cert. denied, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).
 
 
 10
 When the case came to trial, Frisch's conceded that its prayer for injunctive relief was moot; Elby's had disaffiliated all of its restaurants from the Big Boy organization in 1984 and was no longer using the Big Boy mark in any of its advertising. The case was tried to the District Court, with the issues of liability and entitlement to attorneys' fees bifurcated from the issues of the amount of damages or attorneys' fees.
 
 
 11
 At trial, several types of advertising were at issue. After the termination of its Ohio Big Boy licenses, Elby's entered into a reciprocal advertising agreement with WTRF, a Wheeling television station. Elby's advertisements on the station featured weekly specials and other promotions. These advertisements varied significantly in their use of the Big Boy trademark--some emphasized it heavily, while others did not use the mark at all. In return for the advertisements, Elby's restaurants--seven non-Big Boy restaurants in Ohio and eight Big Boy restaurants in West Virginia and Pennsylvania--promoted the television station. Elby's billboards and carryout bags displayed the station's logo and carried the message "watch for Elby's specials on WTRF-TV 7." Sugar packets and matchbooks were imprinted with the station's logo. None of these promotions utilized the Big Boy mark.
 
 
 12
 Elby's also advertised in Wheeling newspapers. These advertisements also featured the weekly specials available at Elby's restaurants in all three states. The Big Boy symbol was used in association with the name "Elby's Family Restaurants." No attempt was made to distinguish the Ohio restaurants from the West Virginia and Pennsylvania restaurants. However, Elby's advertisements in Ohio papers did not use the Big Boy mark.
 
 
 13
 Elby's also advertised in the yellow pages in Wheeling and eastern Ohio. The same advertisements were used in both books. The advertisements featured the Big Boy symbol, the slogan "Home of the Big Boy" or "W. Va. Home of the Big Boy," and listed the West Virginia restaurants followed by a listing of the Ohio restaurants under the heading "Other Elby's Family Restaurants" or "also in Ohio Elby's Family Restaurants."
 
 
 14
 Elby's used some other types of advertising as well. The back of Elby's menus featured a list of all Elby's locations. The format of the menus changed during the period in question; sometimes the restaurants were grouped together, while later they were divided into "West Virginia Home of the Big Boy," "Pennsylvania Home of the Big Boy," and "Elby's Family Restaurants: Ohio." Ohio restaurants would honor Big Boy gift certificates from West Virginia and Pennsylvania. Additionally, Elby's ran some advertisements that included a Big Boy jingle on a Wheeling radio station.
 
 
 15
 Frisch's sought to use expert testimony and consumer surveys to prove that Elby's advertising resulted in actual confusion about the affiliation of Elby's restaurants with the Big Boy chain and the availability of Big Boy sandwiches at those restaurants. Judge Graham discounted the probative value of much of Frisch's evidence, primarily because, although some confusion was established, the evidence did not establish that the confusion was actually influencing consumer decisions to patronize the Ohio restaurants.
 
 DISCUSSION
 
 16
 As an initial matter, Elby's asserts that Frisch's is not the registrant of the Big Boy mark and thus has no standing to sue under Sec. 32(1) of the Lanham Act. The District Court held that Frisch's had standing as an "assignee." While it is unclear whether the standing issue has been preserved for appeal, we need not decide the question. Frisch's sued under both Sec. 32(1), the trademark infringement section, and Sec. 43(a), the statutory unfair competition section. Section 43(a) creates a federal cause of action for false representation of goods or services in commerce, regardless of whether a registered trademark is involved. Generally, "the same facts which would support an action for trademark infringement would also support an action for unfair competition." Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir.), cert. denied 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). As this Court has recently observed, the Sec. 35(a) remedies applicable to actions brought under Sec. 32(1) are also applicable to actions brought under Sec. 43(a). WSM, Inc. v. Wheeler Media Services, Inc., 810 F.2d 113, 116 (6th Cir.1987). Because the District Court found that Elby's use of the Big Boy mark violated both sections, see 661 F.Supp. at 988, we need not decide the Sec. 32(1) standing issue.
 
 
 17
 Frisch's sought an equitable accounting of all profits earned by Ohio Elby's Family Restaurants that were the beneficiaries of the improper advertising. It also sought an award of liquidated damages of $100 per day and attorneys' fees for the infringement by Elby's restaurant in Steubenville, Ohio. Additionally, Frisch's sought punitive damages and attorneys' fees. Frisch's asserts that it was error for the District Court to deny it each of these forms of relief.
 
 A. Equitable Accounting
 
 18
 For a court to order an accounting under Sec. 35(a), bad faith must be shown. See Nalpac, Ltd. v. Corning Glass Works, 784 F.2d 752, 755 (6th Cir.1986). Frisch's argues that the District Court erred in finding that Elby's violation was not willful. Frisch's asserts that the burden of proof of good faith was on Elby's, and Elby's did not carry that burden. However, the appellant has misconstrued the nature of the bad faith inquiry. In Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433 F.2d 686 (2d Cir.1970), cert. denied 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971), cited with approval by this Court in Nalpac, 784 F.2d at 755, the Second Circuit stated that "it is necessary to show 'not only that the infringer infringed, but that he did so with the deliberate intent to cause confusion, mistake or to deceive purchasers; in other words, to purposely palm off the infringer's goods as those of the infringed.' " 433 F.2d at 707, quoting Everest & Jennings, Inc. v. E & J Mfg. Co., 263 F.2d 254, 262 (9th Cir.1958), cert. denied, 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959).
 
 
 19
 Frisch's, however, asserts that the District Court should have presumed the existence of bad faith in this case. To support this argument, Frisch's cites Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 274, 45 L.Ed. 365 (1901):
 
 
 20
 If a plaintiff has the absolute right to the use of a particular word or words as a trade mark, then, if an infringement is shown, the wrongful or fraudulent intent is presumed, and although allowed to be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained.
 
 
 21
 The Elgin dicta relied on by Frisch's is not applicable here. Frisch's had the absolute right to the use of the Big Boy trademark in Ohio, but it had no rights at all to the use of the mark in West Virginia and Pennsylvania. Elby's had the right to use the Big Boy mark in its West Virginia and Pennsylvania advertising. The only questions in this case are whether the "spillover" effect of the advertising damaged Frisch's and whether Elby's use of the Big Boy mark in advertising that spilled over into the Ohio market was in bad faith. The "spillover" problem is inherent in the method used by the trademark owner, Marriott, in granting exclusive licenses in its trademark to more than one licensee in the same advertising market and in encouraging its licensees to advertise the trademark. The derivative nature of the infringement in this case is such that the burden of showing bad faith must remain on Frisch's.
 
 The District Court stated:
 
 22
 This court is mindful of the fact that its predecessor [the judge who granted the preliminary injunction] found that the defendants' infringement was intentional and that this finding was affirmed by the court of appeals. However, this court has now had the benefit of hearing all of the evidence relevant to the issues raised in this case and this court concludes that the defendants' actions were not willful, malicious, or fraudulent.
 
 
 23
 Under Section 35(a) of the Lanham Act, this court's authority to order an accounting is specifically subject to the principles of equity. In view of all the facts and circumstances of this case, this court concludes that equity would not be served by an order which deprived the defendants of all of the profits of their Eastern Ohio operations over a period of thirteen years or more.
 
 
 24
 661 F.Supp. at 991. The District Court's account of the evidence is plausible in light of the record viewed in its entirety; therefore, we hold that the District Court's finding that Elby's actions were not in bad faith is not clearly erroneous. See Anderson v. City of Bessemer, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). Because no bad faith was shown, the District Court was correct in refusing to order an accounting. See Nalpac, 784 F.2d at 755.
 
 
 25
 This reasoning seems consistent not only with the cases but with Professor Palmer's explication of the case law. See I.G. Palmer, The Law of Restitution Sec. 2.12, at 161 (1978), explaining that:
 
 
 26
 One of the recurring problems in the law of restitution is to determine whether, or the extent to which, the defendant's gain is the product not solely of the plaintiff's interest but also of contributions made by the defendant. There are no easy formulas by which such problems can be decided; instead, the court must resort to general considerations of fairness, taking into account the nature of the defendant's wrong, the relative extent of his contribution, and the feasibility of separating this from the contribution traceable to the plaintiff's interest.
 
 
 27
 Based on these considerations, Professor Palmer notes that the general rule in trademark cases is that in order to obtain an accounting, the plaintiff must normally show substantially more than infringement alone. Id. at 161-64. An element of bad faith or willfulness is usually necessary. Our assessment and balancing of the nature and importance of the duty breached against the other factors recounted in the well-reasoned opinion of Judge Graham--considerations which are essentially the same as those described by Professor Palmer--lead us to believe that the District Court reached the correct conclusion.
 
 
 28
 Frisch's also argues that it should at least recover three percent of the Ohio restaurants' profits, the amount of license fees it was entitled to collect before the termination of the contract in 1971. However, Frisch's was unable to show that any of the Ohio restaurants' post-1971 profits were attributable to the spillover use of the Big Boy mark. Frisch's surveys and experts did not establish a link between patronage of the Ohio restaurants and the association of the restaurants with the Big Boy mark. Equity would thus not be served by an award to Frisch's of a percentage of the Ohio restaurants' profits.
 
 B. Liquidated Damages
 
 29
 The license agreement between Frisch's and Elby's for the Steubenville, Ohio, restaurant provided for liquidated damages of $100 per day if, after termination of the agreement, Elby's continued to use the Big Boy mark. The agreement contained a notice requirement on liquidated damages. The agreement provided that Elby's would "eliminate or obliterate any such name or design and any and all advertising, of every kind and nature, including but not limited to use on menus, utensils, and the like within fifteen (15) days after written demand" by Frisch's. App. 1046 (emphasis added). If the fifteen days after written demand passed and Elby's did not comply with the terms of the agreement, Frisch's was entitled to enter Elby's property to make the changes and was entitled to liquidated damages from that date. Id.
 
 
 30
 The District Court found that the only document that might be construed to be the written demand required by the agreement was a letter dated September 24, 1971, from Frisch's counsel to Elby's that requested that Elby's delete certain items from its menus and modify its restaurants so that they did not "in any way resemble a 'Big Boy' operation." The District Court held that this letter was not sufficient to invoke the liquidated damages provision with regard to the spillover advertising. We agree with the District Court. We express no opinion whether the spillover advertising was a violation of the type contemplated by the liquidated damages provision; we merely hold that if the liquidated damages provision was applicable to the advertising involved in this case, Frisch's did not give Elby's sufficient notice of its invocation of the provision.
 
 C. Attorneys' Fees
 
 31
 Frisch's asserts that the District Court erred by denying its request for reasonable attorneys' fees. Section 35(a) provides that a court in "exceptional cases may award attorney fees to the prevailing party." Despite the refusal of the District Court to award damages, Frisch's prevailed in this litigation by showing its entitlement to injunctive relief. However, we do not think this case is "exceptional" within the meaning of the statute. The District Court held that the infringement was not malicious, willful, fraudulent, or deliberate. Therefore, the Court was correct to deny an award of attorneys' fees. See Hindu Incense v. Meadows, 692 F.2d 1048, 1051-52 (6th Cir.1982).
 
 D. Laches
 
 32
 Finally, Frisch's argues that the District Court erred by concluding that Frisch's claim for monetary relief was barred by the defense of laches.
 
 
 33
 The District Court's use of the concept of laches in this case was only as a bar to Frisch's claim for recovery of all of Elby's profits from its Ohio operations for a period of over thirteen years. See 661 F.Supp. at 992. "Laches" was not used by the District Court in the sense of being a statute of limitations or a sole bar to recovery, but was used in the sense that as part of the equitable balancing necessary in a case of this sort, Frisch's delay weighed against its claim for an equitable accounting.
 
 
 34
 Frisch's argues that its 1972 state court suit put Elby's on notice that Frisch's objected to Elby's advertising. However, as the District Court points out, the state court suit made no reference to the spillover advertising that is the subject of this appeal. We hold that the District Court's method of balancing the delay factor in its equitable determination was not error. Additionally, we note that the District Court also determined that Frisch's was not entitled to monetary relief on grounds separate from and independent of the concept of laches.
 
 CONCLUSION
 
 35
 We have reviewed all of the appellant's claims of error and find them to be without merit. Therefore, the judgment of the District Court is AFFIRMED.