**U.S. STRUCTURES, INCORPORATED,** a foreign corporation, Plaintiff–Appellee,

v.

**J.P. STRUCTURES, INCORPORATED,** a Michigan corporation, and Joseph J. Pilat, Defendants–Appellants.

No. 96–1016.

United States Court of Appeals, Sixth Circuit.

Argued March 18, 1997.

Decided Dec. 3, 1997.

Kenneth J. McIntyre (briefed), K. Scott Hamilton (argued and briefed), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for Plaintiff–Appellee.

John F. Fleming, Fraser, MI, Arnold S. Weintraub, Lisa M. DuRoss (argued · and briefed), Weintraub, DuRoss & Brady, Bingham Farms, MI, for Defendants–Appellants.

Before: KENNEDY, CONTIE, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Defendants, J.P. Structures, Inc., and Joseph J. Pilat, appeal from the district court's order granting summary judgment for plaintiff, U.S. Structures, Inc., in a trademark infringement action brought under both the Lanham Act, 15 U.S.C. §§ 1051–1127, and Michigan law. Defendants argue that the district court erred in concluding that they misused U.S. Structures' trademark, and that they acted willfully in doing so. Defendants also challenge the district court's award of damages and attorneys' fees. For the reasons that follow, we affirm the district court on the merits, but reverse and remand as to the court's award of attorneys' fees.

**I.**

In August 1988, defendant Joseph J. Pilat executed a franchise agreement with plaintiff U.S. Structures, Inc. The agreement provided that Pilat would operate a deck construction business under the name J.P. Structures, Inc., and it authorized him to use U.S. Structures' trademark, "Archadeck," and other related trademarks. The franchise operated without problems until February 15, 1994, when U.S. Structures informed Pilat that it would terminate the Archadeck franchise unless the sales royalties required by the agreement were paid within twenty days.

On March 15, 1994, U.S. Structures terminated the franchise agreement for lack of payment. Defendants admit that they continued to use the Archadeck trademark while they attempted to negotiate a settlement of their dispute with U.S. Structures. In addition, it appears that defendants participated in an advertising program which utilized the Archadeck trademark while they were authorized Archadeck franchisees, and that they did not terminate their participation in the program when their franchise was canceled. Defendants received numerous referrals through this program, even though they were no longer authorized to use the Archadeck trademark.

On June 28, 1994, U.S. Structures sued to enjoin defendants from infringing upon the Archadeck trademark, and to recover damages for past infringements under the Lanham Act, 15 U.S.C. §§ 1051–1127. The complaint alleged that defendants continued to "willfully and intentionally" represent to the public that they were an authorized Archadeck franchise after they received notice that their franchise had been terminated, and that they continued to use the Archadeck trademark and phone numbers in violation of the

franchise agreement. The complaint stated causes of action for (1) trademark infringement in violation of the Lanham Act; (2) false description or false representation as to defendants' affiliation with U.S. Structures in violation of the Lanham Act; (3) trademark infringement in violation of Michigan law; (4) common law conversion of U.S. Structures' property interest in the telephone numbers and trademarks associated with the Archadeck name; (5) breach of the franchise agreement; (6) violation of the Michigan Consumer Protection Act; (7) unfair competition in violation of Michigan common law; and (8) infringement of a service mark in violation of Michigan common law. U.S. Structures prayed for an accounting, delivery of phone numbers and other materials associated with the Archadeck name, damages, treble damages, injunctive relief and attorneys' fees and costs, and such other relief as may have been available under the Lanham Act and applicable state law.

After discovery was completed, U.S. Structures moved successfully for summary judgment. The district court held that U.S. Structures was entitled to relief as a matter of law for trademark infringement and unfair competition in violation of sections 32 (15 U.S.C. § 1114) and 43 (15 U.S.C. § 1125) of the Lanham Act. The court then awarded U.S. Structures the following damages: (1) $2,155.00, plus interest, representing defendants' profits after the termination of the franchise agreement (calculated at a rate of twenty percent of all contracts entered into after 3/31/94); (2) $862.00, plus interest, representing unpaid royalties (calculated at a rate of eight percent of all contracts entered into after 3/31/94); (3) $6,465.00, representing treble damages under 15 U.S.C. § 1117(a) and (b); (4) $47,333.15 in attorneys' fees pursuant to 15 U.S.C. § 1117(b); and (5) $10,603.50, representing all past due royalties. With regard to the award of attorneys'

fees, the court found that defendants' infringement was "willful, deliberate, and intentional." Finally, the court enjoined defendants from operating a similar business for one year from October 7, 1994.[1] This appeal followed.

## II.

### A.

Defendants argue that the district court erred in granting summary judgment to U.S. Structures on the issue of trademark infringement, and that it erred in determining the amount of past royalties and profits due to U.S. Structures. We review a district court's grant of summary judgment de novo. *Brooks v. Am. Broad. Cos., Inc.*, 999 F.2d 167, 174 (6th Cir.1993). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, we must draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Lanham Act prohibits the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers. In order to defeat summary judgment in a Lanham Act case alleging violations of sections 32 [2] and 43,[3] defendants

---

1. The district court also denied defendants' motion for leave to file a counter-complaint. Defendants do not appeal this ruling.

2. Section 32, or 15 U.S.C. § 1114(1), provides, in pertinent part:

   Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with

the sale ... or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant....

3. Section 43, or 15 U.S.C. § 1125(a)(1), provides:

   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, sym-

must raise a genuine issue of fact as to (1) whether their use of the trademark was without the registered owner's consent, or (2) whether their unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product. 15 U.S.C. §§ 1114(1)(a), 1125(a). *See generally Holiday Inns, Inc. v. 800 Reservation, Inc.,* 86 F.3d 619, 622–23 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997).

### B.

■ Defendants argue first that the district court erred when it granted summary judgment for plaintiff, because there is a genuine issue of material fact as to whether U.S. Structures consented to their use of the Archadeck trademark after the franchise agreement was terminated. In support of its motion for summary judgment, U.S. Structures offered testimony by its president, Richard Provost, and its intellectual property attorney, Peter Ludwig, both of whom stated that U.S. Structures did not consent to defendants' continued use of its trademark. In opposition, defendants offered the deposition testimony of defendant Pilat that his intellectual property attorney, Larry Trigger, told him that U.S. Structures had agreed to let defendants operate as a quasi-franchise while the parties negotiated a settlement to their dispute. Defendants contend that Pilat's testimony, along with evidence that defendants were referred to potential customers as an Archadeck franchise even after their franchise was terminated, raise a question concerning U.S. Structures' authorization of their use of the trademark.

■ We conclude that there is no genuine issue of material fact as to whether defendants' use of the Archadeck trademark was unauthorized. Summary judgment in favor of U.S. Structures on this issue was appropriate, since defendants failed to offer any admissible evidence in response to U.S. Struc-

tures' evidence that it did not consent to defendants' use of the trademark after their franchise was terminated. Under Fed. R.Civ.P. 56(e), evidence submitted in opposition to a motion for summary judgment must be admissible. *See, e.g., Monks v. Gen. Elec. Co.,* 919 F.2d 1189, 1192 (6th Cir.1990). Hearsay evidence, as well as evidence which is irrelevant to the issue presented, must be disregarded. *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–69 (6th Cir.1991). Because Pilat's testimony consists only of hearsay statements regarding U.S. Structures' alleged consent, it must be disregarded. Similarly, the job referrals are irrelevant to the issue of consent and must be disregarded, because there is no evidence that U.S. Structures was involved in making them.

### C.

■ Second, defendants argue that summary judgment was improper because there is a genuine issue of material fact regarding whether their conduct created a "likelihood of confusion" in the marketplace. The "likelihood of confusion" element requires plaintiff to show that the public believes that "the mark's owner sponsored or otherwise approved the use of the trademark." *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir.1983) (quoting *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 79 (2d Cir.1981)). This court has identified several elements which should be considered in determining whether "likelihood of confusion" has been established, including:

(1) strength of the registrant's mark;

(2) relatedness of the services;

(3) similarity of the marks;

(4) evidence of actual confusion;

(5) marketing channels used;

(6) likely degree of purchaser care and sophistication;

bol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or com-

mercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(7) intent of the defendant in selecting the mark; and

(8) likelihood of expansion of the product lines using the marks.

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.1982) (citing *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir.1981)). While all of these factors are relevant, actual confusion is "obviously the most probative proof of the likelihood of confusion." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1267 (6th Cir.1985). *See also Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 601 (6th Cir.1991). "Indeed, it is difficult to conceive of a situation where a showing of substantial actual confusion would not result in a legal conclusion of likelihood of confusion." *Frisch's Restaurants*, 670 F.2d at 648 n. 5.

■ In granting summary judgment for U.S. Structures, the district court determined that plaintiff established the "likelihood of confusion" element based upon affidavits from five individuals who contracted with defendants after their Archadeck franchise had been terminated, and who testified that at all times they believed they were purchasing Archadeck products. The court also found that defendants intentionally used the Archadeck trademark to obtain business. Defendants argue that the district court's ruling on this issue is erroneous, because evidence of actual confusion is insufficient to establish "likelihood of confusion," and because the court failed to consider all of the *Frisch's* factors individually. We reject both of defendants' arguments. Unlike a trademark infringement case involving imitation of a registered trademark, U.S. Structures' action is based upon the theory that defendants' continued use of the actual Archadeck trademark after their franchise had been canceled falsely suggested that defendants' business remained affiliated with U.S. Structures. The Court of Appeals for the Eleventh Circuit addressed this type of situation in *Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983):

Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. A patron of a restaurant adorned with the Burger King trademark undoubtedly would believe that BKC endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore would be attributed to BKC. Because of this risk, many courts have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement.

*Id.* at 1492–93.

■ We find this reasoning persuasive, and hold that proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish "likelihood of confusion." Accordingly, the district court did not err in concluding that U.S. Structures satisfied the likelihood of confusion test without considering all of the *Frisch's* factors individually.

### D.

■ Third, defendants argue that the district court erred in awarding $10,603.50 in past due royalties, and $2,155.00 in past profits, to U.S. Structures because there is a genuine issue of material fact regarding the accuracy of those amounts. Defendants contend that the amount of past due royalties is disputed because they received two different invoices from U.S. Structures, for $3,600.00 and then for $10,603.50. They assert that the discrepancy between the invoices places in question the actual amount due. However, defendant Pilat admitted during his deposition that he knew that the first invoice was incorrect, and that the second invoice was sent as a replacement. As such, the inconsistency between the two invoices was insufficient to raise a genuine issue of material fact regarding the amount of past due royalties defendants owed to U.S. Structures.

■ Defendants contend that the court erred in awarding past profits based upon twenty percent expected profit margin, since the record shows that they actually lost $5,012.00 on the sales in question. Defen-

dants fail, however, to point to any particular evidence in the record in support of this assertion. It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

We therefore conclude that there is no genuine issue of material fact regarding the accuracy of either the amount of past due royalties or the amount of past profits awarded by the district court to U.S. Structures.

### III.

█ Next, defendants argue that the district court erred when it awarded plaintiff $6,465.00 in treble damages under 15 U.S.C. § 1117(a) and (b), in addition to the $2,155.00 based upon defendants' profits, because § 1117 limits the overall potential recovery to three times the amount of profits. In contending that the district court impermissibly awarded quadruple damages, defendants present a statutory interpretation issue of first impression. We review the district court's interpretation of § 1117(a) de novo. *See United States v. Moore*, 73 F.3d 666, 668 (6th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 1866, 134 L.Ed.2d 964 (1996).

As a preliminary matter, we address defendants' claim that the court erred to the extent it based the treble damages award upon § 1117(b),[4] because that section only applies to counterfeiting cases. Even if we accept defendants' position that this is not a counterfeiting case, as that term is defined for purposes of the Lanham Act, their cause is not advanced, because the district court also cited § 1117(a) as a basis for the damages award. Defendants concede that § 1117(a) applies to this case.

█ Section 1117(a) grants a district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed.Cir. 1984). Defendants argue that this section allows the district court to increase the total damages assessed only to an amount equaling three times the amount assessed as actual damages. We must interpret the section according to the ordinary meaning of its language absent clear evidence of a legislative intent to the contrary. *See United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980).

Section 1117(a) provides that "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." This

---

4. § 1117(a) and (b) provide, in relevant part:

(a) Profits; damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not

a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b) Treble damages for use of counterfeit mark
In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 380 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

section should be read as vesting the district court with discretion to increase a damages award up to three times the actual damages sustained. Thus, the district court did not err in computing damages as an amount equal to four times actual damages.

## IV.

The district court also awarded U.S. Structures $47,333.15 in attorneys' fees pursuant to 15 U.S.C. § 1117(b). Defendants argue that this award was improper because § 1117(b) is inapplicable to this case, and because the amount awarded is unreasonable. For the reasons set forth below, we remand the award of attorneys' fees to the district court for further consideration.

### A.

■ Section 1117(b) applies in cases of trademark infringement that "consist[ ] of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . ., in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b). Section 1116(d) defines the term "counterfeit mark" as

(i) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 380 of Title 36;

but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture[r] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

15 U.S.C. § 1116(d)(1)(B). Where a counterfeit mark is used, an award of reasonable attorneys' fees is mandated, unless the court finds extenuating circumstances. 15 U.S.C. § 1117(b).

We agree with defendants that § 1117(b) does not apply where, as in this case, a holdover franchisee continues to use the franchisor's original trademark after the franchise has been terminated. Although the use of an original trademark is without authorization, it is not the use of a counterfeit mark. Thus, the district court erred in awarding attorneys' fees pursuant to § 1117(b).

■ However, the Lanham Act also provides for recovery of attorneys' fees under 15 U.S.C. § 1117(a). Section 1117(a) states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Unlike § 1117(b), which mandates an award of attorneys' fees unless the court finds extenuating circumstances, § 1117(a) makes attorneys' fees available only in exceptional cases and rests the decision to award them in the discretion of the district court. *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1409 (9th Cir.1993). While the term "exceptional" is not defined in the statute, this court has previously held that a case is not exceptional where the trademark infringement was not malicious, willful, fraudulent, or deliberate. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio,* 849 F.2d 1012, 1017 (6th Cir.1988). It does not, however, follow that a case will always be "exceptional" for purposes of awarding attorney fees where the relevant conduct is found to be willful, fraudulent, and deliberate.

The district court found that defendants' infringement of plaintiff's trademark was "willful, deliberate, and intentional." When one considers that the court made this finding in the context of determining whether there were extenuating circumstances which would preclude an award under § 1117(b), that finding would not, in and of itself, warrant a conclusion that this case is exceptional for purposes of awarding attorneys' fees under § 1117(a). Thus, on remand, the district court must determine whether this case is exceptional; it must then decide, in its discretion, whether an award of attorneys' fees is warranted under § 1117(a).

**1193**

## B.

Finally, defendants argue that the amount of attorneys' fees awarded by the district court is unreasonable. In setting an award of attorneys' fees, the district court must first arrive at the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court should then exclude excessive, redundant, or otherwise unnecessary hours. *Id.* at 434, 103 S.Ct. at 1939–40. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves the following of two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

In order to facilitate appellate review of a fee award, a district court must "provide a concise but clear explanation of its reasons" for the award. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. "[The] district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990). Failure to provide such an explanation requires us to remand the case for further consideration. *Id.*

In this case, the district court based its award of attorneys' fees upon U.S. Structures' summary of hours expended and fees charged. The summary merely lists the number of hours U.S. Structures' attorneys worked on various stages of the case, the hourly rate charged by each attorney, and a total for all attorneys' fees and costs incurred. The court's order provides no elaboration and makes no finding that the hours expended were reasonable, or that the hourly rates were customary. Moreover, under 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act. The district court awarded U.S. Structures all of the attorneys' fees it incurred in this case, and it failed to provide an explanation for why the fees were not apportioned between the Lanham Act and other claims. Such an approach is inadequate, particularly where the fee applicant submits only summaries of hours worked, which makes it impossible to ascertain the number of hours devoted to particular claims by each attorney. Under these circumstances, this court cannot determine whether the district court's award of attorneys' fees is reasonable.

Thus, if the court determines on remand that U.S. Structures is entitled to recover attorneys' fees under § 1117(a), it should provide a clear explanation of its reasons for the award.

## V.

The district court's order granting summary judgment in favor of U.S. Structures is **affirmed** on the merits, and is **reversed** and **remanded** as to the court's award of attorneys' fees.