NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0118n.06

No. 14-1497

FILED
Feb 09, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

LEON BURNS,

    Plaintiff-Appellant,

v.

CITY OF SAGINAW,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

SUHRHEINRICH, Circuit Judge

Plaintiff Leon Burns ("Burns"), a Saginaw police officer, sued the City of Saginaw ("City") for race discrimination, hostile work environment, and retaliation pursuant to Title VII, 42 U.S.C. §§ 2000e-2, 3(a), and the Michigan Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2101, *et seq.* The district court granted summary judgment to the City. On appeal, Burns challenges the district court's retaliation determination.[1] We AFFIRM.

**I.**

Burns is African-American. He was hired by the City in May 1999. He started out as a patrol officer, and eventually became a community police officer, a position he still occupies.

---

[1] Burns does not challenge the district court's ruling on his race discrimination and hostile work environment claims.

The City's Chief of Police was African American when Burns was hired. In 2005, Gerald Cliff, a Caucasian, became Chief of Police.

The events relevant to this appeal began on December 22, 2008, when, while off-duty, Burns had a dispute with a neighbor. The neighbor confronted Burns after Burns allegedly pushed snow with a plow truck onto the neighbor's yard. The neighbor filed a police report against Burns with the Saginaw City Police based on the incident, alleging that Burns struck him with the plow. The matter was referred to the Michigan State Police. Burns was charged with reckless driving and ultimately pleaded guilty to the lesser charge of careless driving in August 2009.

On March 3, 2009, the City was found liable for a large sum of money in a race discrimination lawsuit by another African American police officer. Burns alleges that on the same day, after the verdict was rendered, Sergeant Anjanette Tuer called him on his cell phone, asking him to defend her and say that she was not a racist. When he refused, Tuer said, "I fucking can't stand you fucking black people,… you'll fucking remember this day."

On or about March 5, 2009, Tuer interviewed Burns about the snow plow incident. Tuer recommended discipline, and Burns received verbal counseling as a result of the incident. On April 8, 2009, Burns submitted a complaint to City Manager Darnell Early and the Personnel Department, complaining that his verbal counseling amounted to discrimination by the City. Burns claims that the City never investigated this complaint.

Burns alleges that on October 28, 2009, he was subjected to an internal affairs investigation, without prior notice of the charges. At the meeting regarding the investigation, he learned that in August 2009, several officers complained about his attendance. Lieutenant

Angela Elgie investigated and concluded that Burns had violated departmental policy by (1) not calling "in" and "out" as required, and (2) not being at work on days he was scheduled to work. Burns claims that he later verified and informed Elgie that many of the days in question were scheduled days off. Nevertheless, on November 10, 2009, the City suspended Burns for three days without pay. Burns also claims that another officer, Dan Kuhn, told him that Chief Cliff had said "something to the effect that . . . any nigger that stood up against him, would live to regret it until the day Chief Cliff fired him." Burns contends that when he told Chief Cliff that he could account for the days he allegedly missed, Cliff responded that Burns should be thankful that the City had not charged him with embezzlement. Burns notes that two other Caucasian police officers were not investigated for taking days off without authorization.

The Civil Service Commission later overturned the three-day suspension, concluding that the City had imposed discipline more than 90 days after it should have known of the infractions. *See* Mich. Comp. Laws § 38.514 (stating that "all charges" for police officers in the civil service system "shall be void unless filed within 90 days after the date the violation occurred").

As a result of these incidents, and Chief Cliff's comments, on December 9, 2009, Burns initiated an intake questionnaire with the EEOC. Burns stated that he was being discriminated against because of "my race" and identified two incidents as discriminatory: First, on April 8, 2009, he "wrote a two page letter to the Saginaw City Manager, Darnell Early, about the partial, unfair and discriminatory abuse going on at the Saginaw City Police Department." Second, he claimed that on November 17, 2009, he "was suspended for three (3) work days." After receiving a confirmation letter from the EEOC, Burns submitted a completed charge of discrimination on December 29, 2009, listing the April 8 and November 17 incidents.

Meanwhile, on November 24, 2009, a private citizen, Matthew MacComber, complained to the City Manager's office that he received a traffic ticket in the mail for allegedly running a red light while picking up his child from school on September 24, 2009. Burns had issued MacComber an electronic ticket at 4:03 p.m., on MacComber's personal vehicle, a 2005 Dodge Ram pickup truck. MacComber maintained that he was at work at the time the ticket was issued, that he was driving a van owned by his employer, the State of Michigan, that day (other than during the lunch hour) and that his truck was parked in the employee parking lot after he arrived to work. MacComber provided the City with his time sheet, a copy of the official daily travel log for the work van, and a printout showing that he logged out of his work computer at 4:09 p.m., after the time the ticket was issued. Tuer, who investigated the matter at Chief Cliff's behest, conducted an internal investigation in conjunction with the Michigan State Police. The City concluded that "[t]he evidence obtained in the Internal Affairs investigation . . . emphatically exonerates Mr. MacComber from being guilty of the alleged traffic violation because he was actually working at his office at the time the citation was issued by Officer Burns." On February 17, 2010, Police Chief Cliff recommended that Burns be terminated, and the City Manager agreed. Burns's employment ended on that day.

Burns's dismissal was later overturned by the Civil Service Commission because the City failed to impose the discipline within the 90-day period required by Mich. Comp. Laws § 38.514.[2] The Commission ordered that Burns be returned to work. Burns was assigned to a different position, road patrol. He earned more money per hour, but his working hours were different. Burns eventually returned to the community police officer position in 2011.

---

[2] Burns was paid during the entire period of his termination.

Burns brought this action on August 31, 2011. The City moved for summary judgment. On December 30, 2013, the district court granted the City's motion, holding that Burns failed to create a triable issue with either direct or circumstantial evidence as to any of his claims.

On January 9, 2013, Burns filed a motion for reconsideration, arguing in relevant part that the court failed to analyze whether he could establish a *prima facie* case of retaliation, such that his retaliation claims should not have been dismissed. The district court agreed that it had applied the wrong *prima facie* test to Burns's retaliation claim, which does not require proof that the employer treated a similarly situated employee outside the protected class more favorably. The court then assumed a *prima facie* case of retaliation under the proper test and still found no validity to Burns's retaliation claims, both state and federal, because Burns failed to establish that the City's legitimate nonretailiatory reasons were merely pretext for discrimination.

Burns appeals.

## II.

The only ruling[3] challenged on appeal[4] is the district court's dismissal of Burns's retaliation claim. Although not explicitly stated in its opinion and order granting reconsideration, the court applied the summary judgment standard of review utilized in its earlier opinion and order granting summary judgment.

---

[3] The Notice of Appeal states that Burns appeals from "Opinion and Order Granting in Part Defendants'[sic] Motion for Reconsideration." Burns correctly captures the title of the order. However the district court erroneously stated it as *Defendant's* motion; only Burns filed a motion for reconsideration.

[4] In its jurisdictional statement, the City states that many of the adverse employment actions discussed in Burns's appeal brief should be disregarded because Burns failed to appeal the district court's exhaustion ruling. However, exhaustion is not a jurisdictional requirement under Title VII. *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013). And, as Burns explains, "[t]he other facts alleged in [his] appeal brief are simply background facts and circumstantial evidence relating to his retaliation claims." Reply Br. at 2.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52). All reasonable inferences must be drawn in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.

Title VII prohibits an employer from discriminating against an employee for engaging in conduct protected under the statute. *See* 42 U.S.C. § 2000e-3(a). A Title VII retaliation claim can be established with direct evidence of retaliation or circumstantial evidence that supports an inference of retaliation. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008).

To establish a *prima facie* case of retaliation under Title VII, Burns must demonstrate that: (1) he engaged in activity protected by Title VII; (2) the defendant knew of his protected activity; (3) thereafter, the defendant took "materially adverse" actions against Burns; and (4) the protected conduct was the but-for cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ⎯ U.S. ⎯⎯, 133 S.Ct. 2517, 2534–35 (2013); *Goodsite v. Norfolk S. Ry. Co.* 573 F.

---

[5] We typically review the district court's grant of summary judgment de novo. *Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 558 (6th Cir. 2009). Here, however, our jurisdiction is over the district court's order granting reconsideration in part. Our review of a limited notice of appeal is usually confined to abuse of discretion. *Kimbrough v. United States*, 533 F. App'x 634, 634 (6th Cir. 2013) (per curiam); *Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 924 (6th Cir. 2011) (applying E.D. Mich. LR 7.1). On the other hand, an appeal from a post-judgment order may extend to the underlying judgment. *See United States v. Grenier*, 513 F.3d 632, 635 (6th Cir. 2008). We need not decide today whether de novo or abuse of discretion review applies because Burns's claim fails under either standard.

App'x 572, 582 (6th Cir. 2014). Once Burns establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. *Id.* If the defendant employer satisfies its burden of production, the burden shifts back to Burns to demonstrate that the employer's proffered reason was not the true reason for the employment decision. *Id.* Although the burden of production shifts between the parties, the burden of persuasion always remains on Burns. *Id.*

To establish pretext, Burns must demonstrate that the proffered reason was (1) factually false, (2) did not actually motivate the discharge, or (3) was insufficient to warrant the discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).

The City offered the following reasons for the adverse employment action:

> In regards to his termination, Mr. MacComber, an investigator for the State of Michigan, filed a complaint against [Burns] stating that the ticket issued was fraudulent. Mr. MacComber offered credible evidence that (1) he was not driving his personal vehicle on the day of the ticket and (2) that he was logged onto his work computer at the time the ticket was issued. As such, the City had a factual basis to believe that [Burns] had issued a fraudulent ticket.[6]

First, Burns asserts that this reason is pretext because "there is evidence in the record that the reason for [his] discharge was false." Appellant's Br. at 20.[7] He does not otherwise elaborate

---

[6] The district court did not address pretext in its order granting summary judgment because it dismissed at the *prima facie* stage.

[7] In the district court, Burns claimed pretext because he submitted "ample evidence" that "[the City] and its decision makers are predisposed to discriminate against its African-American police officers on the basis of race." The district court rejected this argument on the ground that the City's alleged predisposition to discriminate "has nothing to do with its proffered reasons in a particular circumstance." Burns also attempted to show pretext with the assertion that the City "breached its policies in the past when Chief Cliff made the decision not to investigate complaints against Caucasian officers." The district court rejected this argument as well, because Burns did not indicate how he and the Caucasian officers who were not investigated were similar.

on this argument and cites to nothing in the record that supports it and has therefore waived this argument. *See Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) (holding that issues that are presented in a perfunctory manner, unaccompanied by developed argumentation, are deemed waived). In fact, the undisputed evidence in the record established that a State of Michigan employee complained that Burns issued him a false ticket and that the City investigated and validated the citizen's account.

Burns also claims in a perfunctory manner without citation or explanation that even if the City's reason was true, it was not sufficient to warrant discharge, because he "was told that there was a recommendation of only a 5 day suspension that was changed to a discharge." Appellant's Br. at 20. This argument is likewise waived. *See Benge*, 474 F.3d at 245.

Finally, Burns argues that the false ticket was not the actual reason for the discharge. In support he points to the following facts: (1) he was discharged less than two months after filing a complaint with the EEOC; (2) his internal complaints were never addressed; (3) Chief Cliff told another officer that any "nigger" that stood up against him would live to regret it; (4) a coworker, Officer Vasquez, told him that because of his complaints, his suspension was changed to a termination; and (5) his discharge was reversed.[8]

Burns has not met his burden of establishing pretext. First, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012). Furthermore, Burns actually filed his EEOC charge *after* McComber filed a complaint with the City Manager alleging that Burns issued a fraudulent

---

[8] In the district court, Burns offered Chief Cliff's comments, and those of Officer Vasquez and Earley, as direct evidence of discrimination.

ticket.[9]  In other words, Burns was being investigated before he filed the EEOC complaint, thus refuting the inference of retaliation.  *See Lewis v. Quaker Chem. Corp.*, 2000 WL 1234356, at *8 (6th Cir. 2000); s*ee generally Nassar*, 133 S. Ct. at 2532 (noting that a but-for causation standard helps to deter the filing of unfounded charges of discrimination by employees who know that they are about to be subject to an adverse employment action).

Second, Burns does not explain how the failure to address his internal complaints establishes retaliation for exercising his Title VII rights, rather than the issuance of a false ticket, was the real basis for his dismissal.  Burns points out that Chief Cliff admitted that it is department policy to investigate all claims of discrimination.  What Burns fails to point out is that Chief Cliff also testified that Burns's April 2009 letter was sent to the city manager, not the police department, and that Cliff had responded to the letter in an email to Earley.

Third, as the district court held, Chief Cliff's alleged statement is hearsay, and without testimony from officer Kuhn that Chief Cliff used racial slurs, the statement cannot be considered at summary judgment.  *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.'").

Fourth, Vasquez's comment that Burns's suspension was changed to termination because of his EEOC complaints is not admissible evidence.  As the district court held,

> Burns testified that he was again told by another officer that "because of [his] persistence of writing letters to complain," the decision was made to terminate his employment. *See* Burns Dep. 113, *attached as* Pl.'s Resp. Ex. 1.  But according

---

[9] Burns's trial counsel acknowledged this fact during Tuer's deposition.

to Burns, "either the Chief [Cliff] or Darnell Earley said, no, make it a termination" because of the letters; he did not "know who elevated it." *Id.* Once again, without deposition testimony or an affidavit from the other officer, this is double hearsay with no exception providing for its consideration.

Incidentally, officer Vasquez, the president of Burns's union, testified that a white officer, Steve Shimmer, was terminated for issuing a false accident report. This undermines the inference that Burns's termination was motivated by his protected activity and not by his serious, unlawful conduct while on duty.

Finally, Burns's discharge was reversed based on the Civil Service Commission's 90-day rule and had nothing to do with the merits of the City's decision.

In sum, none of Burns's evidence rebuts the City's legitimate nonretaliatory reason for terminating his employment in February 2010. The district court did not err in denying Burns's motion for reconsideration of his state and federal retaliation claims.

## III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.