Donald G. BOOMER, Plaintiff-Appellant,

v.

The NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellee.

No. 17135.

United States Court of Appeals Seventh Circuit.

April 2, 1969.

Keith E. Roberts, Gerald J. Brooks, Naperville, Ill., for plaintiff-appellant.

Robert W. Coster, Alvin E. Domash, Richard O. Olson, Chicago, Ill., for defendant-appellee.

Before CASTLE, Chief Judge, CUMMINGS, Circuit Judge, and HOLDER, District Judge.

CASTLE, Chief Judge.

Plaintiff brought this diversity action against the New York Central Railroad Company to recover damages for an alleged breach of contract. Plaintiff began working for defendant on November 11, 1950, as a labor union member, and served defendant pursuant to collective bargaining agreements until 1957, when he was appointed to a non-agreement, managerial position. Thereafter, plaintiff served in non-union positions until his employment was terminated on December 31, 1965. Plaintiff had participated in various merger studies since 1961, and claims that due to uncertainty created by possible mergers, he had been looking for other employment.

On April 5, 1965, while plaintiff was stationed in Chicago, the president of New York Central, A. E. Perlman, sent a letter and "Personnel Policy" statement "to New York Central Non-Agreement Supervisors, Managers and Officers." The letter stated the imminency of New York Central's merger with Pennsylvania Railroad due to the Interstate Commerce Commission trial examiner's approval of the merger, and the company's objective of keeping all managerial personnel. The Personnel Policy stated in pertinent part:

"In keeping with the treatment accorded employees subject to agreements with unions, it will be the policy to avoid adverse effect on all non-agreement personnel. * * *

"Accordingly, these policies will apply to supervisors, managers, other officers, and other employees (except temporary personnel) not subject to agreements with unions. They will apply to all changes affecting these persons that occur as the result of the merger or in anticipation of the merger. Special provision will be made for handling those exceptional situations where inequity or undue personal or family hardship would otherwise result.

"I. SUPERVISORS, MANAGERS, and OFFICERS.

A. No supervisor, manager, or officer who is presently employed by one of the individual companies will be deprived of employment, or have his compensation reduced, or be excluded from fringe benefits as a result of the merger or in anticipation of the merger until he retires, resigns, dies, or is removed for cause. However, the company may offer any such person a position in either a different geographical location, a new field of endeavor, or both.

B. Ability and qualifications, including experience and familiarity with duties, will be the primary considerations in making assignments to positions.

C. Any such supervisor, manager, or officer required to relocate will be entitled to (1) living expenses for himself and family while traveling and securing a new home, (2) moving expenses for household goods, (3) reimbursement for costs and losses in the sale of a home or in cancellation of a lease and (4) a $500 allowance to cover other transfer expense.

D. Any such person under 60 years of age who is unwilling to relocate or take a position in a new field of endeavor will be granted a lump sum severance payment at the rate of position last held and based upon length of service as follows:"

The "Separation Payment" for plaintiff's length of service was twelve months' pay, or $13,020.

On May 27, 1965, plaintiff completed and signed defendant's standard Personal Data Sheet and indicated as follows to the questions asked:

"(Q.) Are you willing to relocate? (A.) Yes.

(Q.) Restrictions? (A.) None.

(Q.) Are you willing to travel? (A.) Yes.

(Q.) Restrictions? (A.) None.

(Q.) In what geographic area would you prefer to work? (A.) No preference."

The merger was finally approved by the Interstate Commerce Commission in Pennsylvania Railroad Company—Merger—New York Central Railroad Company, 330 I.C.C. 328 (1967), and by the Supreme Court in Penn-Central Merger Cases, 389 U.S. 486, 88 S.Ct. 602, 19 L. Ed.2d 723 (1968).

Plaintiff alleges that on the basis of Mr. Perlman's letter and enclosed policy statement, he ceased looking for other jobs. On November 4, 1965, defendant advised plaintiff that he had been "drafted" to work on a merger study and had been assigned as a transportation engineer to New York. Since the duties of the new job would have entailed travelling throughout the Northeast section of the country for five or six days a week, plaintiff, for personal and family reasons, refused to accept the new assignment. As a result of this refusal, and after trying to persuade plaintiff to accept the job, defendant terminated his employment as a non-agreement employee on December 31, 1965, and refused to give him severance pay. Thereafter, plaintiff occasionally worked for defendant in Windsor, Ontario in a union-agreement capacity and for less compensation than he had been receiving in his managerial position. Plaintiff brought this action for defendant's alleged breach of contract, claiming the $13,020 severance pay as damages. The district court entered judgment for defendant and plaintiff brought this appeal.

Plaintiff contends that the trial court erred in not finding the existence of the elements necessary to invoke and apply the doctrine of promissory estoppel. The parties agree that New York law applies and that the doctrine of promissory estoppel is recognized in that state. See Allegheny College v. National Chautauqua County Bank, 246 N.Y. 369, 159 N.E. 173, 175, 57 A.L.R. 980 (1927); Alleghany Corp. v. James Foundation of New York, 115 F.Supp. 282 (D.C.S.D. N.Y.1953). The doctrine has long been recognized in Illinois as well. See Robert Gordon, Inc. v. Ingersoll-Rand Co., 117 F.2d 654, 661 (7th Cir. 1941).

Section 90 of the Restatement of Contracts states the doctrine as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Williston on Contracts, 3d Ed., § 140, p. 611 (1957) states: "Promises of future action, it is generally held, if they can furnish the basis for an estoppel at all, can do so only where they relate to an intended abandonment of an existing

right, and are made to influence others who in fact are induced thereby to act or to forbear."

 Thus, conceding that defendant made an offer calculated to induce plaintiff's continued employment, there is sufficient evidence to support the district court's conclusion that plaintiff did not justifiably rely upon the promise to his irreparable detriment. Such reliance is a necessary element of promissory estoppel. Robert Gordon, Inc. v. Ingersoll-Rand Co., 117 F.2d 654, 661 (7th Cir. 1941); Lebold v. Inland Steel Co., 125 F.2d 369, 375 (7th Cir. 1941).

That this element is lacking in the instant case is shown by the personal data sheet [1] completed by plaintiff on May 27, 1965, which stated that he would be willing to relocate and to travel without restriction. Since this statement of intention was made by plaintiff after he received the April 5, 1965 letter from Mr. Perlman, the evidence supports the conclusion of the district court that plaintiff did not rely on the promise allegedly contained in the letter in thereafter refraining from seeking other employment or in rejecting reassignment because of location and travel requirements. His demand for severance pay upon discontinuance of his employment due to such rejection was, therefore, unjustified. Plaintiff's willingness, after receipt of the alleged promise, to accept reassignment and relocation without restriction, although it might have involved travelling, is inconsistent with any subsequent claim that he altered his position in reliance upon a right to reject the preferred reassignment and collect severance pay.

Moreover, there is nothing in the record which indicates that the district court, which heard the plaintiff testify, committed clear error in its finding that plaintiff did not rely on the promise. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), Federal Rules of Civil Procedure; see also United States v. Oregon State Medical Society, 343 U.S. 326, 332, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

 In addition, we hold that the district court did not err in sustaining defense objections to certain questions put to plaintiff by his counsel, since the testimony sought to be elicited related to plaintiff's subjective feelings and conclusions. See Whitson v. Aurora Iron and Metal Co., 297 F.2d 106, 111 (7th Cir. 1961).

In view of the ground upon which we have elected to base our affirmance, it becomes unnecessary to consider plaintiff's additional assertions that the trial court erred in admitting certain evidence.

Since plaintiff failed to establish a necessary element of his case, the judgment for defendant is affirmed.

Affirmed.

---

1. We reject plaintiff's contention that the data sheet was irrelevant and that the court erred in admitting it in evidence, since it was offered to show that plaintiff did not rely on the alleged promise.