**VISION GRAPHICS, INC., Plaintiff**

**v.**

**E.I. DU PONT DE NEMOURS & COMPANY, Defendant**

**No. CIV. A. 97–30001–MAP.**

United States District Court, D. Massachusetts.

March 25, 1999.

John F. Donahue, Donahue & Cross, Springfield, MA, for Vision Graphics, Inc., Plaintiff.

John C. Wyman, Roche, Carens & De-Giacomo, P.C., Boston, MA, for E.I. Dupont Denemours, Defendant.

### MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Docket No. 16)

PONSOR, District Judge.

## I. INTRODUCTION

Between January 1992 and September 1994, plaintiff entered into four contracts

with defendant to purchase or lease a computer software system and various upgrades to it. Plaintiff contends that it paid defendant substantial sums pursuant to these contracts in reliance on representations that the system would be supported and enhanced in specific ways. In 1996, defendant informed plaintiff that, for financial reasons, it would discontinue developing and supporting the system. Believing itself thus abandoned, plaintiff brought suit.

Plaintiff's six-count complaint alleges breach of contract (Count I); breach of implied warranty of merchantability (Count II); intentional misrepresentation (Count III); negligent misrepresentation (Count IV); promissory estoppel (Count V); and violation of Mass. Gen. Laws ch. 93A (Count VI).

Defendant has moved for summary judgment on all counts. For the reasons set forth below, the court will allow the motion as to Counts I, II, and V, and deny it as to Counts III, IV, and VI.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

The facts pertinent to defendant's motion for summary judgment are largely undisputed. Where the record contains contested evidence, the court, of course, will view the record in the light most favorable to plaintiff. See Fed.R.Civ.P. 56.

Plaintiff Vision Graphics, Inc. ("Vision Graphics") has engaged in the graphics printing business in Massachusetts for over ten years. It provides color separation and electronic pre-press services[1] to customers such as Milton Bradley Company and Friendly Ice Cream Company. These services include page composition,

graphics, and photographic finishing. Defendant E.I. Du Pont de Nemours and Co. ("Du Pont"), a Delaware corporation, is a multinational energy and chemical company.

In the 1980s, Crosfield Electronics Ltd. of the United Kingdom ("Crosfield"), along with other companies, started to design and manufacture color scanning and electronic pre-press equipment. The proprietary software program unique to the Crosfield products, like electronic pre-press systems marketed by other manufacturers at that time, would not accept or run digital information formatted by competing systems.

In 1985, Adobe Systems Inc. in California developed a software program called "PostScript," a highly versatile computer language applicable to the printing industry that could run on Apple Macintosh computers, but not on others. Due to their inability to perform functions on a commercial scale, however, Apple computers and PostScript were unpopular among electronic pre-press firms like Vision Graphics before the 1990s. Later, as Apple computers became more powerful and economical, the use of PostScript to develop print and advertising layouts became much more prevalent among the customers of Vision Graphics and other electronic pre-press operations.

In 1989 and 1990, prior to the contracts between Vision Graphics and Du Pont that eventually led to this litigation, Vision Graphics purchased directly from Crosfield a series of electronic pre-press components.[2]

In January 1992, Vision Graphics and Du Pont entered into an agreement by which Du Pont agreed to sell and Vision

---

1. " 'Electronic pre-press' refers to computer systems used by the printing industry that scan color picture and graphic images into the computer system in digital format, in which images and text can be added, altered, manipulated and composed into pages, which are output onto plates or other media from which printing can be performed by conventional printing systems." (Docket No. 16, Defendant's Statement of Uncontested Facts, at ¶ 2).

2. The court will omit the technical names for the equipment in question; the nomenclature is irrelevant to the discussion of the legal issues.

Graphics agreed to purchase and lease certain Crosfield equipment, specifically a Studio 9500 Cererity Electronic Page Composition System, with three upgrades. By this time, it was of paramount importance to Vision Graphics that this computer system (called "9700R," as upgraded) have the capacity to accept PostScript files in raw form—or, in trade lingo, to be "postscriptable"—as soon as possible. Without this capacity, Vision Graphics would be unable to serve its customers adequately and would cease to be competitive.

Fully aware of this fact, Du Pont, prior to and at the time of entering into the contracts in 1992, orally represented to Vision Graphics that it would continue to upgrade the system. In June and August 1993 plaintiff entered into additional agreements with Du Pont to purchase and lease more equipment, each time relying on the oral representations that Du Pont would continue to support and upgrade the system and that it would soon be completely postscriptable. Thomas Mitchell, the President of Vision Graphics, stated that his decision to lease and purchase the upgrades was based on these representations.

In September 1994, Vision Graphics purchased and leased from Du Pont still more expensive equipment. During discussions preceding the new agreements, Du Pont informed Vision Graphics that it would not take more than a year to render its systems fully postscriptable. As Du Pont claimed that each of the three upgrades was necessary to attain full postscriptability, and as Vision Graphics had already expended significant sums of money in purchasing/leasing the system and upgrades up to that point, Mitchell decided to continue relying on Du Pont.

None of the promises regarding support, upgrading or postscriptability was ever included in any of the parties' written contracts. Equally significantly, it is undisputed that defendant fulfilled all the obligations actually contained in the contract documents.

Between September 1994 and June 1996, even though no additional lease/purchase contracts were signed by the two parties, Vision Graphics was periodically informed by Du Pont that it was researching and developing the system and that full postscriptability was imminent.

By 1996, Apple Computer's operating PostScript programs achieved widespread commercial acceptance from electronic pre-press businesses, because they performed most of the same functions as, and cost substantially less than, proprietary systems such as those manufactured by Crosfield. As a result, Du Pont found it could not compete with other providers of desktop publishing systems. In June 1996, Du Pont informed Vision Graphics that it would no longer support the system it had sold plaintiff. No additional upgrades would be offered, and the system would not be made postscriptable.

After this announcement, Vision Graphics continued to use the system components purchased from Du Pont between 1992 to 1994. However, because its system could not run raw postscript, the company lost many customers and could not attract new customer accounts. Its reputation as a leader in the graphic industry was also severely damaged. Although the total amount spent on the system and upgrades is in dispute, it is unquestionably substantial.

As noted above, in January 1997, Vision Graphics filed this suit against Du Pont, alleging breach of contract, breach of implied warranty of merchantability, intentional misrepresentation, negligent misrepresentation, promissory estoppel and violation of Mass. Gen. Laws ch. 93A.

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank,* 985 F.2d 1113, 1116 (1st Cir. 1993). Initially, the moving party must aver an absence of evidence to support the nonmoving party's case. *See Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990). In order to fend off summary judgment, the nonmoving party (here, the plaintiff) must "establish at least a genuine issue of material fact on every element essential to his case in chief." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991). At summary judgment, it is this court's obligation "to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993) (citation omitted).

Keeping this standard in mind, the court will address Du Pont's motion for summary judgment.

### B. *Contract–Based Claims*

As an initial matter, this court must decide whether to apply Massachusetts or Delaware law. Advocating the application of Massachusetts law, Vision Graphics argues that Delaware lacks a reasonable or substantial relation to the agreement and to the parties in this case. It points out that the only connection to Delaware is that Du Pont is a Delaware corporation. (Docket No. 20).

The governing law provision of the parties' contract, paragraph 15(f) of the Terms and Conditions of System License and Sale, states unequivocally that Delaware law will apply:

> THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE without regard to its choice of law provisions (and the United Nations Conven-

tion on the International Sale of Goods shall specifically not apply).

Vision Graphics contends, however, that this provision should be disregarded because Du Pont breached the *oral* agreement (regarding the postscriptability of the system), not the written one.

■ In a diversity case in federal court in Massachusetts, conflict of law issues must be determined by the law of Massachusetts. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Mass. Gen. Laws ch. 106, § 1–102(3) explicitly provides that in commercial transactions the effect of the Uniform Commercial Code may be varied by agreement between the parties. Mass. Gen. Laws ch. 106, § 1–105(1) further states that with regard to transactions that bear a reasonable relation to more than one jurisdiction, the parties may agree that the law of either may govern their rights and duties.

■ Absent serious conflict with public policy, Massachusetts courts will respect a contractual choice of law provision. *See Roadmaster Indus., Inc. v. Columbia Mfg. Co.,* 893 F.Supp. 1162, 1173 (D.Mass.1995). No public policy argument has been raised by Vision Graphics.

■ The fact that defendant is a Delaware corporation, and that plaintiff freely agreed to the applicability of Delaware law through the execution of several related contracts, is sufficient in this case to establish a reasonable relation between the transactions at issue here and the laws of Delaware. Moreover, as will be seen below, the facts make clear that plaintiff is not attempting to enforce an independent oral contract, but rather trying to add a provision to the existing written contracts. Delaware law will therefore apply.

### 1. *Count I: Breach of Contract*

Du Pont argues that whether it breached its oral agreement about the postscriptability of the system (if such an agreement

ever existed) is immaterial, because Delaware law and the parol evidence rule bar enforcement of oral representations made prior to a written contract. As Du Pont points out, the language of the contract itself solidly supports its position. Paragraph 15(h) of the Terms and Conditions of System License and Sale in the applicable written contract, states as follows:

THIS AGREEMENT CONSTITUTES THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF. IT SUPERSEDES ALL OTHER UNDERSTANDINGS OR REPRESENTATIONS, ORAL OR WRITTEN INCLUDING ANY CATALOGUES OR OTHER ADVERTISING MATERIAL, WHICH HAVE NOT BEEN SPECIFICALLY INCORPORATED HEREIN ...

■ Given the applicable law, and this explicit language, plaintiff's attempt to enforce the alleged oral agreements regarding postscriptability through a claim for breach of contract is doomed.[3] The integration clause precludes the consideration of antecedent oral agreements which would vary or contradict the written language. *See, e.g., J.A. Moore Constr. Co. v. Sussex Assocs. Ltd. Partnership,* 688 F.Supp. 982, 987 (D.Del.1988); Restatement (Second) of Contracts § 215 (1981). It simply cannot be fairly argued that the question of future support and enhancement of the system being purchased, or particularly its postscriptability, was not within the "subject matter" of the written contracts.

Since Du Pont's oral statements are not enforceable, the next inquiry is whether Du Pont has breached the written contract itself. It is undisputed that Du Pont has fulfilled its obligation to provide the software system and upgrades, as required by the actual terms of the contract. No breach of contract therefore occurred.

Accordingly, defendant is entitled to summary judgment on Count I.

2. *Count II: Breach of Implied Warranty of Merchantability*

Vision Graphics alleges that Du Pont breached the implied warranty of merchantability when it announced that the computer system would no longer be supported by research and development, that no additional upgrades would be offered, and that the system would not be made postscriptable.

Du Pont points to paragraph 7, a limited warranty provision of the Terms and Conditions of System License and Sale in the contract. The pertinent part of paragraph 7, which serves as a warranty disclaimer, states as follows:

THE WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

■ Du Pont contends that this disclaimer bars Vision Graphics' claim of breach of the implied warranty of merchantability. The court agrees. Under Delaware Code title 6, § 2–316(2), "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Here, it is clear that the above disclaimer is in writing and its text mentions merchantability.

The remaining issue is the conspicuousness of the language. Delaware Code title 6, § 1–201(10) provides useful guidelines as to what constitutes "conspicuous language." It states that "[a] term or clause is conspicuous when it is so written that a

---

**3.** Plaintiff's citation of a rather old Pennsylvania district court decision is unpersuasive. *Carl Beasley Ford, Inc. v. Burroughs Corp.,*

361 F.Supp. 325 (E.D.Pa.1973), did not involve an integration clause.

reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.... Whether a term or clause is 'conspicuous' or not is for decision by the court."

The disclaimer here was in capital letters and appeared right below the parties' signature line. No person exercising reasonable prudence could have overlooked it.

█ Equally importantly, the record of this case, even viewed under the Rule 56 standard, offers no evidence that any breach of implied warranty occurred. It is true that contracts of sale entered into by a merchant in most circumstances carry an implied warranty that the goods sold are "merchantable." Del.Code tit. VI, § 2–314(1); see Cropper v. Rego Distribution Ctr., Inc., 542 F.Supp. 1142, 1153–54 (D.Del.1982). The computer software system and upgrades, to be merchantable, must have been capable of passing without objection in the trade under the contract description, and fit for the ordinary purposes for which they were intended. See Del.Code tit. VI, § 2–314(1)—(2).

Vision Graphics' claim, however, is based on the system's inability to be made postscriptable—a condition that is neither set forth in the written contract nor properly considered as an "ordinary purpose" for which such system was intended. While it may be true that Vision Graphics' long-term objective was to have the system postscriptable, this feature was certainly not part of the "ordinary purpose" of the system at the time when the contract was executed. The "ordinary purpose" of the system was to handle tasks relating to computer graphics. There is no evidence in the record showing that the system failed to accomplish such tasks.

█ Some evidence of the existence of a defect at the time of delivery is an essential element of a cause of action for breach of the implied warranty of merchantability.

See DiIenno v. Libbey Glass Div., Owens–Illinois, Inc., 668 F.Supp. 373, 377 (D.Del. 1987). Vision Graphics does not allege that the system was defective at the time of delivery, and the system continues to perform as it did at the time of installation. On the undisputed facts of record, even if the warranty had not been effectively disclaimed, no breach of implied warranty occurred here as a matter of law. Thus, defendant is entitled to summary judgment on Count II.

3. *Count V: Promissory Estoppel*

Citing *Boomer v. New York Central Railroad Co.*, 409 F.2d 382 (7th Cir.1969), plaintiff contends that defendant's promises as to its future support of the system were intended to, and did, induce plaintiff to take action to its detriment. These undertakings are therefore enforceable, plaintiff says.

█ It is true that representations as to the future, reasonably calculated to induce action or forbearance, and in fact inducing such action or forbearance, may be enforced where to do so would avoid injustice. *See* Restatement (Second) of Contracts § 90 (1981). Plaintiff must prove an actual promise or definite assurance, and his own reliance thereon to his detriment. *See VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del.1998).

█ The party asserting estoppel, however, has the burden of proving it by clear and convincing evidence. *See Reeder*, 397 A.2d at 141. "Mere expressions of opinion, expectation or assumption are insufficient." *Reeder v. Sanford Sch. Inc.*, 397 A.2d 139, 141 (Del.Sup.Ct.1979).

█ "It is well settled that a mere statement of future intention does not rise to the level of a binding promise and cannot be relied upon for promissory estoppel purposes." *Morris v. Runyon*, 870 F.Supp. 362, 374 (D.D.C.1994) (citation omitted). Such vague statements, made as expressions of future intention and unrelated to the present condition of the

system, do not constitute a sufficiently definite promise for promissory estoppel purposes.

■ In this case, where the written contract contains an integration clause, conflicting oral assurances about future behavior cannot provide the evidentiary fuel necessary to carry that burden. *See Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1124–25 (1st Cir.1995).

As a final consideration, the court's denial of defendant's motion on the counts alleging misrepresentation will supply plaintiff with an opportunity to obtain any relief it is entitled to under this related but more appropriate theory.

In summary, the record will not support any claim for promissory estoppel. Defendant's motion for summary judgment will therefore be allowed as to Count V.

### C. *Counts III & IV: Intentional and Negligent Misrepresentation*

■ For these two non-contractual counts, the parties agree that Massachusetts law governs. "Massachusetts jurisprudence recognizes causes of action for both fraudulent misrepresentation and negligent misrepresentation." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 41 (1st Cir.1998). Accordingly, this court will treat plaintiff's intentional misrepresentation claim as one alleging fraudulent misrepresentation. The First Circuit recently articulated the elements of a negligent misrepresentation claim under Massachusetts law:

> that defendant falsely represented a past or existing material fact without any reasonable basis for thinking it to be true; that he intended to euchre the plaintiff into relying on the representation; that the plaintiff, unaware of the representation's falsity, justifiably relied on it; and that the plaintiff suffered harm due to his reliance.

*Id.* For an action claiming intentional or fraudulent misrepresentation, plaintiff must also show that defendant made the false representation either knowing that the statement was false or with reckless disregard for the truth. *See Kelly v. Brigham & Women's Hosp.,* No. CIV.A. 97–0489B, 1998 WL 512983, at *5 (Mass.Sup. Ct. July 23, 1998); *see also Petricca v. Simpson,* 862 F.Supp. 13, 16 (D.Mass. 1994).

Vision Graphics points to statements made by Du Pont that the system would be fully postscriptable by the end of 1993, and to Exhibit D showing that research and development regarding postscript capability was not even budgeted by Du Pont in 1993. The record therefore contains sufficient evidence to justify a jury in concluding that the promises with regard to postscriptability were either negligently or intentionally misleading.

Given this conclusion, the critical issue is whether the record contains sufficient evidence to support a conclusion that defendant's statements were actually representations of fact and were, in fact, untrue.

Du Pont argues that its statements were merely "opinion," vague predictions of future conduct or sales "puffery" regarding the general virtues of the system. It is possible at a trial on the merits that a jury may accept this contention. But the record as a whole, examined in the light most favorable to Vision Graphics, would also justify a contrary verdict.

■ Statements made in this kind of commercial context are more likely to be actionable, when, as here, the speaker possesses special knowledge of facts unknown to the party relying on the statements. *See McEneaney v. Chestnut Hill Realty Corp.,* 38 Mass.App.Ct. 573, 575, 650 N.E.2d 93 (1995) (citing Restatement (Second) of Torts § 539). In this case, Du Pont possessed all the knowledge and control, unknown to Vision Graphics, as to whether the system was actually going to be postscriptable. Without such knowledge or any other information that indicated otherwise, Vision Graphics may be

found to have reasonably and justifiably relied on Du Pont's statements when it entered into the contracts. The motion for summary judgment on Counts III and IV will therefore be denied.

### D. *Count VI: Violation of Mass. Gen. Laws ch. 93A*

Finally, Vision Graphics alleges that Du Pont has engaged in unfair or deceptive trade practices in violation of Mass. Gen. Laws ch. 93A. The test for assessing a 93A claim such as this is summarized in *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510 (1st Cir.1989): "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.* at 1513 (quoting *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149 (1979)). To put it in another way, a chapter 93A plaintiff "must show that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other businessmen.'" *Id.* (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975)). Here, since the question of "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact," *Ahern v. Scholz*, 85 F.3d 774, 797 (1st Cir.1996) (quoting *Schwanbeck v. Federal–Mogul Corp.*, 31 Mass.App.Ct. 390, 414, 578 N.E.2d 789 (1991), *rev'd on other grounds*, 412 Mass. 703, 592 N.E.2d 1289 (1992)), and since this court has already found that Vision Graphics' misrepresentation claims will survive summary judgment, Du Pont's motion for summary judgment on this count, as well, will be denied.

### IV. *CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is AL-LOWED with respect to Counts I, II, and V, and DENIED with respect to Counts III, IV, and VI. The case will now proceed on plaintiff's claims for intentional and negligent misrepresentation, and unfair trade practices under chapter 93A. The clerk will set the case for a status conference. Three days prior to the conference, counsel will submit their written proposed schedule for completion of discovery.

A separate order will issue.