**PAPA JOHN'S INTERNATIONAL, INC., Plaintiff**

v.

**DYNAMIC PIZZA, INC., et al., Defendants.**

**Civil Action No. 3:02CV–708–H.**

United States District Court, W.D. Kentucky, Louisville Division.

May 6, 2004.

Barry T. Meek, Edward T. White, Michael J. Lockerby, Hunton & Williams, Richmond, VA, Henry S. Alford, James E. Milliman, Middleton & Reutlinger, Louisville, KY, for Plaintiff.

Himanshu M. Patel, Robert M. Einhorn, Robert Zarco, Zarco, Einhorn & Salkowski PA, Miami, FL, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiff, Papa John's International, Inc., ("Papa John's"), and Defendants, Dynamic Pizza, Inc., et al., ("Defendants") entered into a series of agreements, including Development, Franchise and Workout Agreements, in which Defendants became the franchisee of a number of Papa John's restaurants in upstate New York. Papa John's brought this suit against Defendants under federal intellectual property claims, a Kentucky state trade secrets claim, and a breach of contract claim. Defendants counter-claimed, asserting their own breach of contract claim, fraudulent inducement, negligent misrepresentation, and breach of implied duty of good faith and fair dealing. Papa John's moves for summary judgment on all six of its claims and on all four of Defendants' counter-claims.

The Court held a conference with the parties to discuss the summary judgment motions and then held a telephonic conference to discuss its tentative decision. De-

fendants brought up a number of additional issues, including the distinction between alleged misrepresentations made before and after the signing of an agreement containing a merger and integration clause. The Court has now considered all of the arguments as thoroughly as possible.

## I.

■ Papa John's argues that it is entitled to summary judgment on its claims of trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), copyright infringement under § 106 of the Copyright Act of 1976, 17 U.S.C. § 106, and misappropriation of trade secrets in violation of the Kentucky Uniform Trade Secrets Act, KRS § 365.880, because Defendants continued to use trademarks, trade secrets, and copyright materials, while refusing to comply with the reporting, payment, and other obligations of their agreements. Defendants argue that Papa John's never ter-

minated the intellectual property rights. Therefore, Defendants believe that Papa John's consented to their use of such property up until the time Defendants officially terminated the agreements by closing the restaurants.

The viability of these claims turns upon whether Papa John's terminated Defendants' right to use its intellectual property under the various agreements.[1] Pursuant to the "Without Notice" provision in the franchise agreements, after three notices of breach, Papa John's has the discretion to immediately terminate the agreements even if Defendants cured the defaults. Papa John's also has the discretion to *not* terminate the agreements. Papa John's alleges that, even though it did not send Defendant an actual letter of termination, the "Without Notice" provision allows for the agreement to be terminated without giving Papa John's notice. Defendants do not contest that they received three notices of default within a twelve month period, although it is not clear whether the notices concerned Defendants' failure to pay royalties.[2]

---

1. The Kentucky Uniform Trade Secrets Act ("KUTSA") claim is discussed with the other federal intellectual property claims because the key element of this claim is whether the trade secret was misappropriated by using it without the consent of the Papa John's. Therefore, the issue of whether Papa John's ever terminated Defendants' rights to use its trademarks, copyrights, and trade secrets goes directly to the element of consent. If Papa John's never terminated Defendants' franchise rights, Defendants had consent to use such trade secrets and would not be guilty of misappropriation under KUTSA.

2. The letters/notices Papa John's submitted as evidence of default/breach of the agreements that occurred after the Workout Agreement are:

    1. June 19, 2001: Letter to Defendants regarding default due to failure to promptly pay past due amounts owing to Papa John's in the amount of $69,019.71. The letter put

Defendants on default notice pursuant to ¶ 19(c)(ii) of the Franchise Agreements.

    2. June 29, 2001: Letter to Defendants regarding default due to failure to promptly pay past due amounts owing to Papa John's in the amount of $47,347.55. The letter put Defendants on default notice pursuant to ¶ 19(c)(ii) of the Franchise Agreements.

    3. February 12, 2002: Letter to Defendants regarding past due account balances of $114,009.73 and putting a number of stores on prepaid status for all future orders until arrangements made to clear the past due balances.

    4. February 13, 2002: Letter to Defendants regarding default due to failure to promptly pay past due amounts owing to Papa John's in the amount of $111,691.61. The letter put Defendants on default notice pursuant to ¶ 19(c)(ii) of the Franchise Agreements.

    5. February 19, 2002: Letter to Defendants stating that if they do not provide

The "Without Notice" provision appears directly after the "Automatic Termination" provision. The latter provision states that: "You [Defendants] shall be in default under this Agreement, and the Franchise and all rights granted to you in this Agreement shall *automatically terminate* without notice to you ..." *Franchise Agreement,* ¶ 19(a)(i)-(xii) (emphasis added). This automatic termination provision covers situations where the franchisee assigns all of its rights to creditors, franchisee files a petition in bankruptcy, or if people collect against franchisee's business. *Id.* at ¶ 19(a)(i)-(xii). It allows for Papa John's to terminate the relationship without ever allowing Defendants to cure. More importantly, the "Automatic Termination" provision allows termination without notice.

The "Without Notice" serves a different circumstance. That provision states that:

> You [Defendants] shall be in default, and we may, at out option, terminate the Franchise and all rights granted in this Agreement, without affording you any opportunity to cure the default, *effective upon the earlier of receipt of notice of termination by you, or five days after mailing of such notice by us, upon the*

occurrence of any of the following events ..."

*Id.* ¶ 19(b) (emphasis added).

In other words, the provision describes circumstances in which Papa John's may lawfully terminate at its election. Although Defendants did receive three notices of material violations of the agreement within a year under subsection (vii), Papa John's apparently never mailed a termination notice. Here, Papa John's had not provided *actual* notice of termination as the provision requires and thus has not made the required contractual election.[3]

The cases cited by Papa John's concern circumstances in which the franchise agreements were *lawfully terminated,* and the franchisee continued to use the registered trademark or copyright post-termination without the franchisor's consent. *See U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1190 (6th Cir. 1997) (holding that proof of unauthorized use of an original trademark by one whose license to use the trademark *had been terminated* is sufficient to establish the likelihood of confusion prong); *Hawkins Pro–Cuts, Inc. v. DJT Hair, Inc.,* 1997 WL 446458, *5 (N.D.Tex.1997) (stating that

evidence of appropriate insurance coverage within five days of the letter, Defendant would be placed on notice of default with the possibility of termination. Clearly there were three notices of default between June 2001 and June 2002. None of the excerpts of the letters submitted to the Court indicate if the amounts past due are derived from lack of royalty payments by Defendants. However, this is irrelevant in that the termination provision Papa John's relies upon only states three notices of default, not necessarily three notices of default for *royalty* payments.

3. Because the "Without Notice" provision is at Papa John's discretion, Papa John's may or may not terminate the franchise agreements, and the rights pursuant to such, once three

notices of default occur. Once they receive three notices of breach, even if cured, Defendants could assume that Papa John's will rely on this particular termination provision, that they are no longer allowed to use Papa John's trademarks, and therefore they must close the restaurants or be in violation of the Lanham and Copyright Acts. However, in the exact same scenario Defendants may believe that, by closing the restaurants, they would be in breach of the agreements by not operating the franchises if Papa John's in fact decided *not* to terminate the agreements despite the discretion to do so. This cannot be the proper outcome. That is why the Franchise Agreement called for Papa John's to eventually give Defendants some notice for the termination to be effective.

continued use of the trademark *after the Franchise Agreement had been terminated* was unauthorized and trademark infringement). These cases present quite a different circumstance than the Court finds here because Papa John's appears not to have actually terminated the Franchise Agreements by providing proper notice.

Therefore, the Court will deny Papa John's summary judgment on all intellectual property and trade secret claims. The Court would consider a motion prior to trial to dismiss these claims.

## II.

■ Papa John's also moves for summary judgment on Defendants' counterclaims of fraudulent inducement and negligent misrepresentation. Defendants claim that Papa John's made numerous representations to them which were false, and these misrepresentations caused the premature closing of Defendants' restaurants. They claim reliance upon Papa John's representations regarding the low initial costs and high sales volume, site selections, marketing, as well as the fact that Papa John's promised its full support to Defendants.[4] Defendants allege that Papa John's knew all of the "real" facts, yet made inaccurate statements to Defendants both before and after the execution of the Development Agreement. Papa John's did this, Defendants allege, to induce them to become franchisees. After the initial signing of the Development Agreement, Defendants argue Papa John's continued to make misrepresentations to them so that they would keep opening new franchises and enter into new Franchise Agreements, even though Papa John's knew there was no chance of financial success in the upstate New York market.

### A.

Papa John's argues that the fraudulent inducement and misrepresentation claims cannot stand because the series of agreements contain airtight provisions to prevent just these claims. Specifically the merger and integration clause in the Franchise Agreement states that:

> *Entire Agreement.* This Agreement, the documents incorporated herein by reference and the Exhibits attached hereto, compromise the entire agreement between the parties, and all prior understandings or agreements concerning the subject matter hereof are concealed and superceded by this Agreement. The Exhibits to this Agreement are incorporated herein by reference and made a part hereof as set out in full herein.

*Franchise Agreement,* ¶ 25(c).

Moreover, James Cosentino, president of Dynamic Pizza and co-defendant, signed a Franchise Acknowledgment as a potential franchisee before ever executing the Development Agreement. This acknowledged that no officer or representative of Papa John's made any representations or

---

**4.** Specifically, Defendants assert that the $125,000.00 cost represented to them to build a Papa John's restaurant was actually $200,000.00. Defendants allege that they were told the upstate New York area supported the Papa John's concept when in fact Papa John's knew that it did not. Defendants assert that Papa John's did not validate the trade areas in New York to ensure that the demographics and competitor sales were comparable to other parts of the country where Papa John's franchises were successful. Defendants argue Papa John's promised to give them full support in the form of marketing and training, and this never occurred. Further, Defendants argue that the requisite size of the restaurants, the signage, and the equipment all changed from what Papa John's initially represented, which inevitably increased the asserted costs. Defendants believe the restaurants closed because they could never generate profit. Defendants argue that if they knew then what Papa John's had known, they never would have entered into the Development Agreement.

warranties to Defendants about the actual or potential sales volume, revenues, or profits that may be expected or earned from the operation of a Papa John's franchise. *Franchise Acknowledgment,* ¶ 2.

Cosentino also acknowledged that Papa John's provided the Uniform Franchise Offering Circular ("UFOC") and that no officers or representatives of Papa John's made any representations contrary or inconsistent with the contents of the UFOC. *Id.* at ¶ 6. He also acknowledged that Defendants had time and opportunity to consult with independent professional advisors regarding the provisions of UFOC and about Papa John's generally. *Id.* at ¶ 5. Finally, he acknowledged that Papa John's made no representations about any markets in which Defendants may locate their Papa John's franchise, that they understood that any demographic of similar information provided by Papa John's did not constitute a representation or warranty that such information will assure any level of sales, revenues, or profits, and that they understood that Papa John's System may evolve and change over time making such an investment a substantial risk. *Id.* at ¶ 8, 10. The parties adopted the merger and integration clauses, as well as the Franchise Acknowledgment, as part of the Workout Agreement.

Although no Kentucky courts have spoken specifically on this issue, another court in this district, interpreting Kentucky law, has. In *KFC Corp. v. Darsam Corp.,* 543 F.Supp. 222 (W.D.Ky.1982), the court held that a merger or integration clause of a franchise agreement, with wording almost identical to the current contractual language, was a sufficient basis to consider the agreement a complete and accurate integration of the contract.[5] Therefore, the court refused to admit evidence that was for the purpose of varying or contradicting the writing. *Id.* at 225. This Court agrees. At some point, a court must apply the contractual agreements of two sophisticated parties. Defendants presented evidence which sought to establish a separate set of oral understandings apart from the written agreements, and the court refused because "such a clause makes clear the intention of both parties that the agreement was to be the complete and exclusive statement of terms." *See id.* (citing *Franz Chemical Corp. v. Philadelphia Quartz,* 594 F.2d 146, 149 (5th Cir. 1979)). Therefore, if any misrepresentations fraudulently induced Defendants into entering the Development Agreement, i.e., misrepresentations made prior to the signing of the agreement, the merger and integration clause prevents this action from being brought. *Id.*[6]

5. The merger or integration clause in *KFC Corp. v. Darsam Corp.* stated that:

This agreement supersedes any an all other oral or written agreements between the parties hereto with respect to the outlet which is the subject matter hereof and contains all the covenants and agreements between the said parties with respect to said matter. Franchisee acknowledges that neither KFC not anyone on behalf of KFC has made any representations, inducements, promises or agreements, orally or otherwise, respecting the subject matter of this agreement or respecting any other subject matter, which are not embodies herein.

543 F.Supp. at 224.

6. *See also Vision Graphics, Inc. v. E.I. Du Pont de Nemours,* 41 F.Supp.2d 93, 98 (D.Mass.1999) (holding that enforcement of alleged oral representations made prior to execution of written contract was barred by the parol evidence rule and the explicit integration clause); *AAR Int'l, Inc. v. Vacances Heliades S.A.,* 302 F.Supp.2d 869, 872 (N.D.Ill.2004) (holding that statements made prior to signing of lease with integration clause were not actionable in fraudulent misrepresentation); *Wooton Enterprises, Inc. v. Subaru of Am.,* 134 F.Supp.2d 698 (D.Md. 2001) (holding that any actionable statements made during negotiations were superceded by fully integrated franchise agreement and could not reasonably be relied on by franchi-

### B.

Defendants argue that even if the Development Agreement's merger and integration clause prevents an action in fraudulent inducement, this clause cannot prevent an action for negligent misrepresentations made *after* the Development Agreement. Defendants state that the misrepresentations made by Papa John's representatives encouraged and compelled the *continuing development* of additional franchises-despite Defendants' concern over the financial failure of the initial franchises in upstate New York. Therefore, Defendants argue that the individual Franchise Agreements, and the merger and integration clauses included in each and every one of those subsequent agreements, do not prevent the negligent misrepresentation action. The Court has considered with great care the extent to which post-agreement misrepresentations are actionable and whether the above mentioned misrepresentations claims can stand as a matter of law.[7]

The Development Agreement was executed on September 2, 1996, so all alleged misrepresentations prior to or concurrent with the execution are excluded by the merger and integration clause. *See infra,* Section II, part A. Defendants state that from 1997 through 1999, they developed nineteen restaurants and none generated profits since their openings. However, Defendants state that Papa John's continued to assure them, throughout this time period, that they needed to follow the marketing plan, including a massive marketing campaign, and sales would increase. *See Defendants' Memorandum of Law in Opposition to Papa John's Motion for Summary Judgment, Statement of Material Facts,* ¶ 29.[8]

Defendants cite *Davis v. McDonald's Corp.,* 44 F.Supp.2d 1251 (N.D.Fla.1998), for the proposition that summary judgment cannot be granted as to post-agreement misrepresentation claims *solely* on the basis of the agreement having an integration clause. However, *Davis* presents a different set of circumstances than in the

---

see); *Brock v. Baskin Robbins, USA, Co.,* 2003 WL 21309428, *5 (E.D.Tex.2003) (holding that where a merger clause is included in the written contract, alleged collateral promises will not be enforced through fraud because under fraud the reliance must be reasonable).

**7.** Defendants allege that Papa John's, through misrepresentations and omissions, justifiably induced them to rely on such misrepresentations, by spending money, time, expertise and effort to *develop, open, and operate* Papa John's restaurants in upstate New York. *See Defendants' Counter–Claim, Count IV: Negligent Concealment, Misrepresentation and Omission,* ¶ 48 (emphasis added). Defendants also assert that these misrepresentations were made knowingly, intentionally, or at least with disregard to reasonable care, and intended to induce Defendants to execute the agreements and to invest substantial time, money, expertise and effort. *Id.* at ¶ 49. Defendants assert that the Papa John's misrepresentations were designed to mislead them. *Id.*

**8.** Specifically, Defendants allege that Papa John's continued to assert facts about the size, signage, and equipment of the restaurants after signing the Development Agreement and the initial Franchise Agreements. However, prior to the time Defendants actually opened the first series of restaurants, Papa John's changed what it initially represented. This increased the cost of each store. After this, Papa John's continued to assert that the upstate New York area supported the Papa John's concept, that sales volume would initially be $7,000.00 per week, and that sales would "ramp up" once Defendants would follow the "O" plan. Papa John's promised to give Defendants its full support. Defendants state that Papa John's approved three new sites for restaurants without properly evaluating them, yet still demanded Defendants to open these additional restaurants at a rapid pace. *Id.* at ¶ 36. Defendants state that Papa John's kept telling them that if they increased their marketing and advertising the sales and profits would increase, but they never did. *Id.* at ¶ 37–39.

current case. In *Davis*, a fast food franchisor sued a franchisee for trademark infringement and to recover unpaid debt. *Id.* at 1256. The franchisee counterclaimed, arguing that it was injured by the franchisor's encroachment into "its market" when the franchisor opened new restaurants in the vicinity. *Id.* at 1260. The court dismissed all of the misrepresentation claims *preceding* the formation of the agreements because the franchisee could not have reasonably relied on franchisor's representations in light of the explicit waiver on the price analysis data, the merger and integration clause, and the fact that the franchisee was no stranger to franchises or the possibility of encroachment since such had occurred to it in another market. *Id.*[9]

More important to this analysis, the *Davis* court continued that issues of fact remained relevant to McDonald's *post-agreement* representations, which concerned the impact of new stores on the sales at franchisee's stores. *Id.* at 1261. The court held that the integration clause did not effect post-agreement representations *per se.* The court believed that post-formation representations could be actionable, even those concerning future impact and profitability, as long as the franchisor had superior knowledge of the underlying facts. *Id.* Because McDonald's did not convince the court that there was undisputed evidence showing that the franchisee and franchisor had equal knowledge of the facts underlying the alleged misrepresentations, the franchisee may have reasonably relied on the misrepresentations

about the future impact when deciding to continue investing in its restaurants. *Id.*

Many factors distinguish the *Davis* post-agreement misrepresentation claims from those in our case. In *Davis*, the franchisee executed, for each of his five McDonald's franchises, five separate franchise agreements. These franchise agreements consisted of a Franchise Letter Agreement with an attached License Agreement. However, the franchisee in *Davis* opened all five of these restaurants, and signed all five franchisee agreements, at approximately the same time in May 2001. The alleged post-agreement misrepresentations, concerning the impact of the new restaurants being opened, all occurred *after* the execution of every single franchise agreement. *Id.* at 1260. Unlike in the current case, there was no course of misrepresentations and no additional integration clauses to consider.

■ The current parties executed, throughout the course of their relationship, a series of contracts that each contained an integration clause. In fact, the parties executed at least nineteen integration clauses within the series of Franchise Agreements over the course of two years. After every series of alleged misrepresentations, the parties executed another Franchise Agreement with a merger and integration clause. The pattern of alleged misrepresentations and Franchise Agreements has repeated itself again and again, so that each merger and integration clause has eliminated any misrepresentation that

9. Printed at the bottom of each price analysis in *Davis* was: "RECIPIENT SHOULD NOT EXPECT TO ACHIEVE ANY OF THE REVENUES OR EXPENSES IN THE ATTACHED." 44 F.Supp.2d at 1260. The merger and integration clause in the Franchise Agreement stated that: "It is understood and agreed that neither McDonald's not anyone acting on behalf of McDonald's has made any representations, inducements, promises, or agreements, orally or otherwise. respecting the subject matter of the Franchise which is nor embodied herein or set forth in the Uniform Franchise Offering Circular for Prospective franchisees." *Id.*

preceded it. The Court disagrees with Defendants that the merger and integration clauses in each Franchise Agreement do not come into play with the course of misrepresentations about the continuous development of franchises.[10] The Court will give contractual effect to the repeated expression by these two sophisticated parties.

### C.

■ The Court finds another convincing legal principle which also supports the same result. In *America's Favorite Chicken Co. v. Cajun Enterprises, Inc.*, 130 F.3d 180, 186 (5th Cir.1997), the Fifth Circuit held that it did not even have to decide the whether the integration clauses prevented the misrepresentation claims because the allegedly fraudulent statements made to the franchisee were not actionable as a matter of law. Under the applicable state law, a cause of action existed for fraudulent misrepresentation of *past* or *present* facts, but unfulfilled promises or statements as to *future* events could not be the basis for a fraud action. *Id.* at 186 (emphasis added). Similar to the current case, the franchisor only stated that the franchisee *could expect* sales similar to those in the example market area, given the demographic similarities between the markets, and that sales *would definitely increase* in a certain store if the franchisee ran it properly. *Id.* The court held that statements were nothing more than projections of future events and were not actionable as fraud under the state law. *Id.*

Similar to the alleged misrepresentations made in *America's Favorite Chicken,*

---

**10.** Although such an argument was not explicitly discussed by Defendants in their *Memorandum of Law in Opposition to Papa John's Motion for Summary Judgment, Statement of Material Facts,* the *Davis* court discussed the exception to the general rule that statements of future prediction, such as future profit, cannot be considered fraudulent. No Kentucky cases specifically address the exception to the general rule of future predictions not being actionable, and the Sixth Circuit has not discussed this specific point. *See De Roode v. Sheppey,* 32 F.2d 634, 638–639 (6th Cir.1929) (holding that deflated estimates of value by one having superior knowledge do not constitute misrepresentations when other party is given all information asked). The exception applies if the party making the statements had superior knowledge. Predictions or statements that are only promissory in nature or only express what will happen in the future are not actionable as fraud, unless the representing party has exclusive knowledge and should have been aware that the other party would rely heavily on their assertions. *See Miller v. Premier Corp.,* 608 F.2d 973, 981 (4th Cir.1979); *see also Payne v. McDonald's Corp.,* 957 F.Supp. 749, 760–61 (D.Md.1997); *see Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1024 (S.D.Fla.1992) (holding that projections of future profits or business success may constitute fraud if declarant had exclusive or superior knowledge of the facts). Some courts believe that "superior knowledge" and "reasonable reliance" are intertwined, i.e. whether reliance on future projections of profits is reasonable depends both upon the manner in which the projections are represented and what in fact was known by the person claiming inferior knowledge. *See Payne,* 957 F.Supp. at 761. Statements made in the commercial context are more likely to be actionable when the speaker possesses special knowledge of the facts unknown to the party relying on that statement. *See Vision Graphics,* 41 F.Supp.2d at 93. Defendants here had extensive knowledge concerning the way franchises and franchise profits worked, even though they were new to the pizza delivery industry. It is undisputed that the agreements were between two sophisticated parties. In addition, Defendants acknowledged that they had the chance to have their own experts and attorneys research about Papa John's and the market it was about to enter. *Franchise Acknowledgment,* ¶¶ 2–10. Under such circumstances, it can hardly be claimed that Defendants relied to their detriment on Papa John's predictions about future events or that Papa John's had superior knowledge.

all of the statements made by Papa John's concerned future events, were statements that were merely predictive, and were statements which Defendants could not reasonably relied upon. Kentucky courts have specifically held that it is unreasonable to rely on projections of future profits or future sales in a fraud case. *See Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky.App.2003) (holding that mere statements of opinion or prediction, such as future profits or how well a business will do in a particular market, may not be a basis for a fraud or misrepresentation action because predictions are not past or present material facts). Many other courts agree. *See Zar v. Omni Industries, Inc.*, 813 F.2d 689 (5th Cir.1987) (holding that future predictions and opinions, especially those regarding future profitability of business, cannot form basis for fraud as matter of law); *Hardee's v. Hardee's Food Sys., Inc.*, 31 F.3d 573, 576 (7th Cir.1994); *Barrington Press, Inc. v. Morey*, 752 F.2d 307 (7th Cir.1985); *Fruit Industries Research Foundation v. National Cash Register Co.*, 406 F.2d 546 (9th Cir.1969); *Haque Travel Agency, Inc. v. Travel Agents Intern., Inc.*, 808 F.Supp. 569 (E.D.Mich.1992) (holding that statements of franchisor that total investment of capital necessary would be about $85,000, that agency would "turn around" within 12 to 18 months, that agency's gross profit once business was estab-

lished would be approximately $300,000 and that franchisor would play substantial role in operation of franchise were not fraudulent under Michigan law); *Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F.Supp. 1311 (N.D.Ill.1993); *Flight Concepts Ltd. Partnership v. Boeing Co.*, 819 F.Supp. 1535 (D.Kan.1993). Therefore, even without the integration clauses, Defendants' post-agreement negligent misrepresentation claims must fail as a matter of law.[11]

## III.

Defendants also claim that Papa John's committed negligent misrepresentation by failing to disclose and/or concealing certain facts about the upstate New York development area. Defendants must first prove that Papa John's had some sort of duty to report such a fact. Many courts hold that a franchisor-franchisee relationship does not give rise to this duty because it is not fiduciary in nature. *See America's Favorite Chicken*, 130 F.3d at 186; *see also Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992); *Wooton Enterprises, Inc. v. Subaru of Am.*, 134 F.Supp.2d 698, 716 (D.Md. 2001). Defendants fail to identify any duty on Papa John's part that would have required it to disclose the facts it complains. First, the parties were not in a fiduciary relationship. Second, Defendants are sophisticated entities and business people

11. Other cases hold that it is the combination of the disclaiming merger and integration clause, along with a number of other factors including promises of future performance, parties both being sophisticated entities represented by experienced counsel, lengthy negotiations, and party claiming misrepresentation undertook its own detailed investigation, which warrant a finding that there is no actionable negligent misrepresentation. *See Uncle Henry's Inc. v. Plaut Consulting Inc.*, 240 F.Supp.2d 63 (D.Me.2003). Because *jus-* *tifiable* reliance is an element of negligent misrepresentation, it seems obvious that the number and combination of these key events should preclude a party from relying on any misrepresentations that may have been made. This same combination—merger and integration clause, sophisticated parties, future events (mostly having to do with profits), a franchisee investigation—exist within this set of facts. Defendants' reliance was not justified in light of all of the events.

with the ability to independently investigate the condition of the locations it planned to take over. *America's Favorite Chicken,* 130 F.3d at 186. As discussed before, Defendants in fact signed a *Franchise Acknowledgment* stating that they had the opportunity to investigate the franchises and the development areas of the franchises. Therefore, Defendants cannot bring a fraudulent concealment claim.

These franchise agreements were negotiated by two sophisticated business entities. No doubt they negotiated all of the written representations and warranties. The parties agreed to the merger and integration clauses to avoid potential disputes over the scope of the obligations and representations under the agreements. If one party wanted to add or subtract a term of the contract, including the merger and integration clauses, it could have done so in contract negotiations. Papa John's correctly states that under Kentucky law, actionable misrepresentations must relate to a past or present material fact which is likely to effect the conduct of a reasonable man and be an inducement of the contract. *See St. Martin v. KFC Corp.,* 935 F.Supp. 898, 909 (W.D.Ky.1996). Mere statements of opinion or prediction, such as future profits or how well a business will do in a particular market, may not be a basis for a fraud or misrepresentation action because predictions are not past or present material facts. *See id.; see also Rivermont Inn,* 113 S.W.3d at 640.

This rule of law prevents a negligent misrepresentation claim.[12] This is the case with or without the multiple integration clauses, which prevent both pre and post-agreement misrepresentations being actionable. This rule of law is even more pertinent in this case because Defendants actually acknowledged, in writing, that these predictions could not be considered representations and that this venture was in fact risky. A party cannot rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing. *See Rivermont Inn,* 113 S.W.3d at 640–641.

Defendants ask this Court to determine that Papa John's is responsible for their business difficulties. As earnestly as Defendants and their counsel have struggled to come up with some theory which would establish culpability on the part of Papa John's for their unfortunate business ventures, none of the misrepresentation claims are actionable. The multiple airtight

---

**12.** Kentucky common law recognizes six elements for the tort of fraudulent misrepresentation: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention of inducing plaintiff to act, or that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff thereby suffered injury." *See Clark v. Danek Medical, Inc.,* 64 F.Supp.2d 652, 655 (W.D.Ky.,1999) (citing *Crescent Grocery Co. v. Vick,* 194 Ky. 727, 240 S.W. 388, 389 (1922)); (*see also Progressive Specialty Ins. Co. v. Ros-* ing, 891 F.Supp. 378, 379 (W.D.Ky.1995); *Keeneland Ass'n, Inc. v. Eamer,* 830 F.Supp. 974, 993 (E.D.Ky.1993)). The tort of negligent misrepresentation differs from fraudulent misrepresentation only in that it demands a false representation or concealment be made negligently, rather than recklessly or with knowledge of its falsity. *See Ingram Industries, Inc. v. Nowicki,* 527 F.Supp. 683, 684 (E.D.Ky.1981). If Defendants' negligent misrepresentation claim cannot meet each of these six elements, it cannot survive a motion to dismiss for failure to state a claim. *See Clark,* 64 F.Supp.2d at 657. The Court does not believe defendants have met all of the elements, namely reasonable reliance.

merger and integration clauses (in the Development, multiple Franchise, and Workout Agreements), along with a preceding Franchise Acknowledgment by the Defendants, warrant dismissal of Defendants' fraudulent inducement and negligent misrepresentation claims. It follows that Papa John's is entitled to summary judgment as a matter of law for *all* misrepresentation claims, both those made before and after the execution of the numerous agreements and acknowledgment entered by Papa John's and Defendants in this case.

### IV.

Papa John's also seeks summary judgment on its own breach of contract claims. They also seek dismissal of Defendants breach of contract and breach of implied duties claims.

This is undoubtedly a breach of contract case as to the franchise agreements. However, many questions remain unclarified. In addition, many of the contractual issues seem to be based on factual disputes that cannot be decided on summary judgment. It is not clear what exactly the initial breach was after the Workout Agreement, when it occurred, and how to measure the damages of such a breach.

At the very least, it seems likely that Defendants prematurely closed the restaurants prior to the end dates set out in the Franchise Agreements and failed to pay royalties from at least December 2001 until the closing of each individual restaurant. Whether Defendants can present any evidentiary defense to the contractual claims is unclear. Moreover, the amount of damage due to any proven breach of contract is disputed. Due to these ambiguities, the Court will deny Papa John's motion for summary judgment as to both parties' breach of contract claims and as to Defendants' breach of good faith and fair dealing claim.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Plaintiff has moved for summary judgment as to each of its own claims as well as those counterclaims of Defendants. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment as to its claims under the Lanham Act, the federal Copyright Act and the Kentucky Uniform Trade Secrets Act are all DENIED.

IT IS FURTHER ORDERED that Plaintiff's motions for summary judgment on Defendants' counterclaims are SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the breach of contract claims of each party, and Defendants' breach of implied duty of good faith and fair dealing, remain for trial.